ZIGMONT, F.K.A. TOTO, APPELLEE, *v.* TOTO, APPELLANT.

(No. 54117—Decided April 25, 1988.)

*John V. Heutsche,* for appellee N. Darlene Zigmont.

*Meyers, Hentemann, Schneider & Rea Co., L.P.A.,* and *Thomas L. Brunn,* for appellant William A. Toto, Sr.

*Cheryl S. Karner,* guardian ad litem.

MARKUS, J. Following a Florida dissolution of her marriage, the wife registered the Florida decree in the

Cuyahoga County Court of Common Pleas. Thereafter, she and her former husband filed numerous motions in the Ohio court to enforce or modify alimony, division of property, child support, child custody, and visitation. After they reportedly agreed on a settlement of their disputes, the trial court attempted to reduce their agreement to judgment.

The husband appeals from that judgment. He argues that the court failed (a) to determine which state's law governs their disputes, (b) to consider his proposed entry, and (c) to include additional terms. Since the record fails to show a cohesive in-court settlement, or an agreement about the terms of an extrajudicial settlement, we reverse and remand for further proceedings.

I

The parties married in 1977 and had two children. The wife initiated Ohio proceedings to dissolve their marriage in 1980 and ultimately obtained a Florida dissolution in 1983. The Florida decree provides in pertinent part:

"3. The Court approves, adopts and incorporates by reference into this Final Judgment the parties' Settlement Agreement attached hereto as exhibit A.

"4. The parties shall have shared parental responsibility with regard to their minor children; the children shall reside with Wife, and Husband shall have free and liberal access to the children, all in accordance with the terms of the parties' Settlement Agreement."

Relevant provisions in that 1983 settlement agreement provide:

"5. CHILD CUSTODY. The parties shall share parental responsibilities with regard to their minor children. The parties shall each retain full parental rights and responsibilities with respect to their children and shall confer on all major decisions effecting [sic] the children's welfare, including decisions effecting [sic] their general upbringing, education, emotional development and stability, cultural and religious training, medical or dental treatment, and the retention, if required of any child care assistants who are to remain in the marital home overnight. In the event that the parties cannot mutually agree upon any decision regarding the aforementioned aspects of the children's welfare then the parties shall confer and seek the advice of such third parties as may be appropriate. If the parties still cannot agree, then the ultimate responsibility for such decisions and the final determination with regard to the same, shall be the Husband's.

"The primary physical residence of the minor children shall be the marital residence located at 8673 Hollis Lane, Brecksville, Ohio. It is presently anticipated that the Wife shall reside with the parties' minor children at said location in accordance with the remaining terms of this paragraph.

"* * *

"6. VISITATION. [Extensive provisions for visitation by the 'nonresidential parent.']

"7. CHILD SUPPORT. [Extensive provisions for child support with adjustments for changes in the Consumer Price Index.]

"8. CHILD CUSTODY, VISITATION AND SUPPORT MODIFICATION. In the event at any time after the execution of this agreement until the youngest child's eighteenth (18th) birthday [1995], any fact or circumstance arises, which fact or circumstance has an adverse impact on the parties' minor children and which would render the terms of this agreement no longer in the best interests of said children, then either party shall be entitled to apply to a Court of competent jurisdiction to modify the terms of this agreement.

"* * *

"17. SITUS. This agreement shall be construed and governed in accordance with the laws of the State of Florida."

All the parties returned to reside in Ohio. In 1984, the wife registered the 1983 Florida decree, with its incorporated settlement agreement, in the domestic relations division of the trial court pursuant to its Local Rule 30 (petition to register a foreign decree). In the following two years, the former husband and the former wife filed approximately forty motions for consideration by that court.

A referee conducted hearings on some of those motions and rendered a report to the referring judge pursuant to Civ. R. 53(E). Among other recommendations, the referee proposed that the court grant the wife legal custody of the children, subject to their visitation with the husband. Both parties filed timely objections to the referee's report. However, the court never ruled on any of those objections or adopted any part of the referee's findings or recommendations.

After a pretrial at which it requested counsel to brief applicable choice of law issues, the court scheduled a hearing on some of the pending motions. On the hearing date, the court waited while the parties pursued settlement negotiations. A child psychiatrist whom the court had appointed as an evaluator, a guardian *ad litem* for the children, and the court's referee assisted those negotiations. At or near the conclusion of the settlement discussions, the husband discharged his attorney.

Having been advised that the parties reached a settlement, the court directed the children's guardian to recite its terms on the record in open court. The court added that the wife's attorney should later draft a proposed journal entry to recapitulate the reported agreement for the court's approval. The husband, the wife, the court's referee, and the psychiatrist were present while the guardian recited the purported agreement to the court. No witness gave sworn testimony about the terms of that agreement.

The guardian's report of the settlement included a provision that "[t]he mother shall have full custody of the two minor children." The children would "primarily reside with the mother." However, the parents reportedly agreed that they would consult with each other about the children's health care, education, and visitation. According to the guardian, they agreed upon binding arbitration procedures for any unresolved differences on any of those matters.[1] They would continue counselling sessions with a court-appointed psychologist to encourage their understanding and cooperation.

The wife was represented by counsel, but the husband chose to proceed without counsel even though the court advised him that he had a right to obtain counsel. As the guardian recited terms, various participants interjected corrections, modifications, and disagreements about those terms. The court volunteered that it would have used Florida law to interpret the Florida decree, but that the settlement eliminated any need to construe it. No one expressly disavowed the agreement, but the court never called upon either party to state his or her approval or disapproval. No signed or unsigned document purports to recite its terms.

After the purported in-court settle-

---

[1] We express no opinion whether binding arbitration can replace the trial court's responsibility for resolving disputes about child care and visitation. See Annotation (1968 & Cum. Supp.), 18 A.L.R. 3d 1264.

ment, the wife's attorney submitted an "Agreed Journal Entry" for the court's approval. With regard to custody, this proposed entry stated that the wife "shall have sole care, custody and control of the children" subject to other provisions in the entry. It repeated the binding arbitration procedures for disputes about health care, education, and visitation. It did not provide for further family counselling sessions with the court-appointed psychologist.

Within three days after he received the proposed entry from the wife's counsel, the husband sent mailgrams to the court and the wife's lawyer. He asserted that the proposed entry did not adequately state the terms of the agreement, and requested additional time to submit his own proposed entry. Shortly thereafter, he sent another mailgram to the court and adverse counsel, repeating his intention to submit an entry. He did not address any mailgram to the clerk, but his communications are part of the file.[2]

In due course, the husband filed his proposed entry. It reviewed part of the history of the disputes and the negotiations. Many of the provisions seem similar to the terms in the wife's proposed entry, though it uses different language. With regard to child custody, it provided that the parties would "share the parental responsibilities," while the wife had "primary residential custody."

The husband's entry directs both parents and both children to continue psychological counselling so long as the court-appointed psychologist deems it necessary. The counselling would seek "to accomplish a normal and lasting working and responsible relationship between all parties."

On the same day that the husband filed his proposed entry, the court signed and filed the wife's proposed entry. Its caption designated it as an "Agreed Journal Entry," despite the husband's refusal to sign it. One week later, the court filed a "Supplemental Judgment Entry" which stated in part:

"The Court recognizes that the caption is not necessarily controlling of the contents of any pleading or entry and that the entry of June 10, 1987, was a judgment incorporating the in-Court settlement agreement of the parties. For failure of the signature of the defendant [husband], the entry itself was not necessarily an agreed journal entry although it incorporated the terms of the in-Court settlement agreed upon by all parties; accordingly, the entry should have been captioned more simply as a 'JUDGMENT ENTRY.'"

## II

The husband's first and fourth assigned errors complain that the court failed to announce whether Ohio or Florida law would control the case before accepting a settlement. These contentions have no merit. The court had no duty to decide any legal issue before it ruled on the merits of a controversy. A party has no right to know the court's disposition toward an issue before the party participates in or completes a negotiated settlement.

Moreover, the husband mistakes the significance of the ruling he

[2] We need not determine whether his mailgrams properly challenged the proposed entry. Cf. *Sperry v. Hlutke* (1984), 19 Ohio App. 3d 156, 157-160, 19 OBR 246, 248-250, 483 N.E. 2d 870, 872-874 (a litigant's letter to the judge does not justify judicial action, when no copy was filed with the clerk or served on the adverse party). As we explain below, the court's judgment lacks support from evidence or an agreement, even if no one challenged it before the court filed it.

sought. Florida law might well control some aspects of the controversy, while Ohio law may control other aspects. Presumably, Florida law controls the meaning of the Florida decree and the Florida agreement which it incorporates. Cf. *Aldrich* v. *Aldrich* (1964), 378 U.S. 540, 542. However, Ohio law presumably controls any change of custody for a child who resides in Ohio. Cf. *Charity* v. *Jackson* (Oct. 24, 1985), Cuyahoga App. No. 50051, unreported (R.C. 3109.04[B] governs modification of a Louisiana custody order).

Neither Florida nor Ohio law limits the parties' ability to agree about disputed matters, so long as their agreement does not adversely affect the best interests of the children. See, *e.g.*, R.C. 3109.04(A) and (D) (court shall approve parents' negotiated joint custody plan unless it is not in the best interests of the child); see, also, *Pemelman* v. *Pemelman* (Fla. App. 1966), 186 So. 2d 552, 555 (courts will uphold the parties' agreement concerning child custody where no reason to disturb the agreement is presented). Thus, Florida law would permit an agreement to change from joint custody ("shared parental responsibility") to sole custody ("sole parental responsibility"). See Fla. Stat. Ann. Section 61.13(2)(b). We overrule the first and fourth assignments of error.

### III

The husband's second and third assignments of error challenge the court's adoption of the wife's proposed judgment entry. They argue that the court should not have accepted the wife's entry because (a) he did not agree to sole custody, and (b) the wife's entry omitted important agreed terms about mandatory counselling.

Ordinarily, an in-court settlement binds the parties, even if they did not reduce it to writing. *Spercel* v. *Sterling Industries, Inc.* (1972), 31 Ohio St. 2d 36, 60 O.O. 2d 20, 285 N.E. 2d 324, paragraph one of the syllabus; *Rodgers* v. *Rodgers* (May 7, 1987), Cuyahoga App. No. 52105, unreported. The trial court can properly enter a judgment which accurately reflects an agreement they made in open court and read into the record. *Bolen* v. *Young* (1982), 8 Ohio App. 3d 36, 37, 8 OBR 39, 40, 455 N.E. 2d 1316, 1318.

However, the court should not reduce an agreement to judgment without reliably determining its content. Thus, the court should hold an evidentiary hearing to resolve any dispute about the existence of an agreement or its terms. *Morform Tool Corp.* v. *Keco Industries, Inc.* (1971), 30 Ohio App. 2d 207, 210, 59 O.O. 2d 320, 321, 284 N.E. 2d 191, 193; *Arendt* v. *McDonald* (Mar. 28, 1985), Cuyahoga App. No. 48956, unreported.

In this case, the in-court proceedings lacked clarity, since they did not confirm either party's agreement to any of the stated terms. Moreover, neither party's proposed entry conformed precisely to the terms which the guardian recited when she purportedly recounted their agreement. The court has no latitude to embellish or interpret an in-court agreement when it reduces that agreement to a judgment. Since the court did not hear the parties agree and received no evidence about their agreement, it could not make independent findings about that agreement.

By adopting the wife's entry, the court modified the children's custody without an agreement and without finding that the statutory factors justified such a change. See R.C. 3109.04; *Kraus* v. *Kraus* (1983), 10 Ohio App. 3d 63, 70-71, 10 OBR 73, 81, 460 N.E. 2d 680, 687. Consequently, we sustain the second and third assigned errors. Accordingly, we vacate the trial court's judgment and remand for further proceedings. The court

should either confirm at an evidentiary hearing that the parties made a specific agreement, or adjudicate the disputed claims.

*Judgment accordingly.*

PATTON, P.J., and J.V. CORRIGAN, J., concur.