OPINION
Helene D. Jackson, plaintiff-appellant, appeals a decision of the Franklin County Court of Common Pleas. The trial court found that an in-court settlement agreement existed between appellant and defendants-appellees, Craig and Pamela Bellomy. We affirm.
Prior to 1987, the Roman Catholic Diocese of Columbus ("Diocese") owned five lots on Linwood Avenue in Columbus, Ohio. A building on the south portion of the property was used as a rectory, a building on the north portion of the property was used as a convent, and a building on the east portion of the property was used as a garage. The garage faced south toward Deshler Avenue while the other two buildings faced east toward Linwood Avenue.
In 1987, the Bellomys purchased the southern two lots (lot numbers 64 and 65) from the Diocese. However, the Bellomys and representatives from the Diocese testified they were unaware that six feet of the thirty-five foot garage extended north onto lot 66. The representatives stated the property was transferred to the Bellomys excluding a survey being performed.
After purchasing the property, the Bellomys began making improvements. In 1988, they installed a fence that began at the northeast corner of the garage and extended east toward Linwood Avenue. They also built an in-ground pool with a concrete apron that surrounded the pool, which extended approximately three feet north onto lot 66.
In February 1993, appellant and her husband, Michael P. Jackson, viewed lots 66, 67, and 68 with the intention of purchasing the property from the Diocese. Craig Bellomy stated in an affidavit that while appellant was viewing the property, he told her the fence was the boundary line between the two properties. On April 17, 1993, appellant entered into a lease purchase agreement with the Diocese and a survey was scheduled to be performed prior to the transfer of the property to appellant. Appellant claims that she first became aware of the encroachment problems when she received the results of the survey on May 26, 1993. The survey stated that the fence was not in conformance with the legal description of the property and that the garage was over the property line.
A closing date of June 30, 1993 had been scheduled, but after the discovery of the encroachment problems, the Diocese was unwilling to close on the property until the issue was resolved. On July 7, 1993, appellant and the Diocese closed the sale on the property after appellant signed a number of documents satisfying representatives from the Diocese that the encroachment problem had been settled. Appellant later claimed the documents were actually acknowledgments that the encroachments existed and were not waivers of her right to have them removed.
On August 23, 1993, appellant filed a complaint against the Bellomys in the Franklin County Court of Common Pleas. The complaint alleged that the Bellomys had trespassed on the disputed land. The complaint also alleged that appellant had incurred $3,100 in damages because the "grass on [appellant's] property has been killed as a result of [the Bellomys'] trespasses." Appellant requested, pursuant to R.C. 901.51, that the Bellomys be required to pay triple the cost for appellant's damages. Appellant claimed because of the Bellomys' "unlawful withholding of the land, [appellant] has been deprived of said rents and profits since August 1, 1993, and will in the future be so deprived to her damage in the sum of $12,000." Appellant also requested a removal of all encroachments and that the Bellomys be required to pay punitive damages.
On September 23, 1993, the Bellomys filed an answer to appellant's complaint. Included in their answer was a counterclaim against appellant. The Bellomys claimed they were entitled to a reformation of the deed. They also claimed appellant was liable to them because of an incident between Michael Jackson and Craig Bellomy. According to the complaint, Michael Jackson attempted to "forcibly trespass" onto the Bellomys' property by "intentionally breaking the gate latch on the north side of the wood fence." The Bellomys claimed a struggle ensued between Michael Jackson and Craig Bellomy in which Bellomy suffered a cut on his hand. They also claimed Michael Jackson "resorted to maliciously destroying said fence by breaking the top of one of the fence boards" and removing trees the Bellomys planted prior to appellant's purchase of the property. The complaint also alleged Michael Jackson caused Pamela Bellomy "serious emotional distress" by intentionally harassing and annoying her.
On October 12, 1993, the Bellomys filed a third-party complaint against the Diocese. The complaint stated in part:
 Due to a mutual mistake between the Diocese and the Bellomys, the legal description contained in the deed * * * when the property was conveyed to the Bellomys by the Diocese in 1987 mistakenly failed to convey the entire property purchased by omitting a seven foot strip along the entire north boundary of the Bellomys property * * *. The deed mistakenly did not convey a substantial portion of the garage the Bellomys had contracted to purchase as well as land in front of the garage extending to Linwood Avenue.
The Bellomys claimed that they were "entitled to a reformation of their deed to include the seven foot strip along the north boundary line." They also claimed they were entitled to damages "equal to the difference in the market value of their property, including all improvements, if the deed is reformed *** less the market value of their property, including all improvements, if the deed is not reformed."
James A. Griffin, Bishop of the Diocese, was substituted as a third-party defendant in place of the Diocese. On January 21, 1994, Griffin filed an answer to the Bellomys' third-party complaint and also included a cross-claim against appellant. The third-party complaint alleged that appellant "caused a cloud on the title and a slander to the title of real estate then owned by the [Diocese]." The complaint also alleged that appellant engaged in "wrongful interference of the contract between the [Diocese] and the Bellomys" and that appellant breached her contract with the Diocese. Griffin requested: (1) a reformation of the deeds to the Bellomys and appellant to establish the boundary line; and/or (2) compensatory damages if the Bellomys prevailed against Griffin.
In response to Griffin's third-party complaint, appellant filed a counterclaim against Griffin alleging that the Diocese "fraudulently induced [appellant] to purchase 1249 Linwood Avenue." Appellant requested "compensatory damages of $150,000; punitive damages; her fees and costs; and other relief as equitable."
On October 25, 1994, Michael Jackson was disqualified by the trial court to represent appellant. The court found that Michael Jackson personally participated in some of the incidents, which were directly related to the case, which could require him to be called as a witness. Appellant appealed this decision to our court. On July 11, 1995, after noting that the "history of this case is a rather lengthy and tedious one rent with a multitude of litigious moves and countermoves by both parties," we reversed the trial court's decision disqualifying Michael Jackson as appellant's counsel. Jackson v. Bellomy (1995), 105 Ohio App.3d 341,344.
After the case was remanded by this court to the trial court, the parties filed several motions for summary judgment in December 1996. In March 1997, the trial court, in a fifty-six-page opinion, ruled on the motions for summary judgment. The court concluded in its opinion that appellant's position was "not supported by statute, precedent, equity, common sense, fairness, or the English language." Before a final judgment entry was filed by the trial court, the parties began negotiating a settlement agreement.
On May 5, 1997, a hearing was held during which James K. Reuss, acting as appellant's counsel, recited for the record an agreement reached between the parties. Appellant's counsel stated:
 The settlement agreement provides that the boundary line between the property of the Bellomys and the property of the Jacksons, as each owns their property in fee simple, will be as follows:
 That the property line shall extend from the northeast corner of the Bellomys' garage parallel to the north edge of the garage and out to Linwood Avenue; that from the northeast corner of the garage, the Bellomys will own fee simple along a strip that goes three feet to the north of that corner and then from that point parallel to the north wall of the garage to the rear or west boundary of the property, which I understand abuts up against an alley — that will create a strip which is three feet from north to south — and then from the northeast corner of the garage to the rear of the property that will not be parallel to the line that extends through the garage but that will be provided in fee simple to the Bellomys;
 That the Bellomys will record a new deed to that effect which will memorialize this disposition of the property;
 That a judgment entry, your Honor, will follow, which counsel will circulate and agree to, which will memorialize this disposition in legal-description terms as opposed to the terms that I'm using for purposes of this conference here, this characterization on the record, but that judgment entry will follow.
 In addition, the third-party defendant, Bishop Griffin, Diocese of — Roman Catholic Diocese of Columbus, has agreed to pay certain settlement amounts to plaintiff Helene Jackson and certain settlement amounts to defendants Craig and Pamela Bellomy; that by the agreement of the parties, the terms of those settlements are confidential and not to be disclosed to others other than the parties and their counsel.
 The settlement agreement further provides that all parties and all counsel for parties agree to dismiss with prejudice all claims for money damages and all claims for monetary sanctions against all other parties and all other counsel of those parties, that dismissal to be with prejudice. All such claims for money damages and for monetary sanctions arising out of this litigation, specifically in that regard, although I — this is meant in addition to all other claims, all of the claims for frivolous conduct pursuant to O.R.C. Section 2323.51 between and among the parties and their counsel are dismissed with prejudice and waived by the parties;
 It is further agreed that the defendants and the third-party defendant agree not to enforce or not to collect any judgment for Rule 11 sanctions which the court might have entertained on account of any behavior of plaintiff's counsel prior to this settlement agreement;
 It is further agreed that any and all other claims between and among the parties that have not been memorialized yet by my statement on the record are dismissed with prejudice;
 That all claims for attorney fees, interests, and costs held by the parties or their counsel are waived and released with prejudice by all other parties and their counsel;
 That to the extent not previously disposed of by this settlement agreement as I have reflected it on the record, that each party is to bear its own costs, including but not limited to the costs of deposition transcripts, the costs of retaining court reporters for purposes of taking testimony, and any similar costs except for court costs * * * [.]
In addition to the terms of the agreement stated by Reuss, counsel for the Bellomys and for Griffin also commented on the terms of the agreement. The Bellomys' counsel stated:
 Can I add just one other thing real quick? I forgot to also mention — I think we're in agreement with this — that the Bellomys will be granted an easement for the purpose of maintaining their fence in that area, and that will run with the land so future property owners to whom the Bellomys sell to would have the same rights.
On August 29, 1997, appellant filed a motion to enforce the May 5, 1997 settlement agreement claiming that the "agreement read in court is a binding and enforceable contract." The Bellomys also filed a motion to enforce the settlement agreement. However, appellant and the Bellomys differed on how the settlement agreement should be enforced. The court ordered an evidentiary hearing to be held to "resolve the parties' dispute about the existence of an agreement or the meaning of its terms as read into the record at the hearing on May 5, 1997."
On October 17, 1997, an evidentiary hearing was held concerning the disputed terms of the May 5, 1997 agreement. The court stated that the May 5, 1997 agreement:
 * * * is literally an agreement, as far as everyone is concerned, disposing of all issues except where the property line is supposed to go. And I believe that that is the only thing that you folks were unable to reach an agreement about; or if they reached an agreement, there is a dispute as to what the terms of that agreement are as to the property line.
Appellant, the Bellomys, and James Noll, a finance director with the Catholic Diocese of Columbus, testified at the hearing concerning the May 5, 1997 agreement. Appellant testified that she did not think about whether the Bellomys' fence would be on their side of the property line and that they "just discussed where the property line's going to be." Appellant also testified that she did not recall hearing the Bellomys' counsel state during the May 5, 1997 hearing that the Bellomys would be granted an easement for the purpose of maintaining the fence. Craig Bellomy contradicted appellant by stating that "the fence always was the boundary" and that the negotiations centered on determining the property line based upon the existing placement of the fence. He also testified that there was an agreement that the Bellomys "were going to retain an easement for the maintenance of our fence on the north side of it." Pamela Bellomy testified that the parties talked at length "about the fence behind the garage *** [and] about the easement." She also testified that her understanding of the agreement was that the property line was the fence. James Noll testified that he was present in the courtroom on May 5, 1997. He stated that he heard the statement read into the record concerning the easement even though he had a hearing impediment and he was sitting in the gallery seats in the back of the courtroom.
On November 7, 1997, the court filed a decision. The decision stated that "[t]he court finds that there is no disagreement among the parties as to the terms and conditions agreed to covering those issues: that there was a meeting of the minds about those issues and that a binding contract exists among the parties relating thereto." The court also stated:
 It is a stretch of one's imagination and defies logic to believe that anyone would ignore the existence of a standing fence, which existed when the Jackson property was purchased, in negotiating a lot line from the garage to Linwood Avenue, but instead refer only to an imaginary line which radiated from the northeast corner of the garage, along the fence and then cutting across the fence, and ending at Linwood Avenue approximately 3 to 12 inches from the fence on the Bellomys side of the fence. The testimony of the Bellomys is clearly determinative of where the lot line should run. Their counsel's recitation about the fence and the easement in the May 5th Agreement is persuasive of the inclusion of the fence and easement in the lot line determination.
 Based on the May 5th Agreement and the testimony presented at the evidentiary hearing, the Bellomys' understanding of the on-the-ground boundary line is more reasonable. The on-the-ground boundary line is the fence between the two properties. The Court enters judgment in favor of the Bellomys as it relates to the ownership of the fence and finds the fence to be the on-the-ground boundary line between the Bellomys and the Jacksons. The Bellomys are hereby granted a three foot easement on the Jackson side of their fence in order to maintain the fence. Such easement is to run with the land.
The court incorporated the December 15, 1997 decision with an order filed on June 7, 1999. Appellant appeals the June 7, 1999 order and presents the following four assignments of error:
 I. The trial court erred on June 7, 1999, by imposing an arbitrary final order.
 The trial court erred on June 7, 1999, and December 15, 1997, in finding that there was an agreement made in court on May 5, 1997, and in determining its terms.
 III. The trial court erred in denying summary judgment for the removal of encroachments but granting summary judgment for reformation of boundaries, and in not granting summary judgment against claims for battery and property damage.
 IV. The trial court erred in dismissing the diocese as a party.
Appellant argues in her first assignment of error that the June 7, 1999 order was an "arbitrary final order." Appellant argues in her second assignment of error that the trial court erred in its June 7, 1999 order finding the parties had reached a settlement agreement on May 5, 1997. Because of the interrelated nature of appellant's first and second assignments of error, we will discuss them together.
"It is well established that a trial court may enter a judgment that reflects an agreement that is read in open court into the record." Grubic v. Grubic (Sept. 9, 1999), Cuyahoga App. No. 73793, unreported, discretionary appeal not allowed (1999),87 Ohio St.3d 1476, following Zigmont v. Toto (1988), 47 Ohio App.3d 181,185. "Where parties enter into a settlement agreement in the presence of the trial court, such an agreement constitutes a binding contract." Id. following Spercel v. Sterling Industries,Inc. (1972), 31 Ohio St.2d 36. A trial court has discretionary authority to enforce in-court settlement agreements or to modify them out of equity. Hileman v. Hileman (July 26, 1999), Stark App. No. 1998CA00256, unreported. A trial court may even adopt an in-court settlement agreement into its judgment and enforce it even if one party later will not give approval. Torrence v.Torrence (July 31, 1997), Stark App. No. 1996CA00223, unreported, following Gulling v. Gulling (1990), 70 Ohio App.3d 410.
However, when a party later disputes the terms of the agreement, the trial court should hold an evidentiary hearing to resolve any dispute about the existence of an agreement or its terms. Waddell v. Waddell (Dec. 16, 1996), Butler App. No. CA96-03-056, unreported, following Zigmont, supra, at 185. "The law is clear that to constitute a valid contract, there must be a meeting of the minds of the parties, and there must be an offer on the one side and an acceptance on the other." Noroski v. Fallet
(1982), 2 Ohio St.3d 77, 79. "Whether a meeting of the minds has occurred is a question of fact to be determined from all the relevant facts and circumstances." Dowd v. Barrett (Feb. 2, 1998), Warren App. No. CA97-08-084, unreported, following Garrisonv. Daytonian Hotel (1995), 105 Ohio App.3d 322, 325.
Clearly, both appellant and the Bellomys at one time agreed that they had reached a settlement concerning the property line between their properties. This is evidenced by the fact that appellant and the Bellomys both filed motions to enforce the May 5, 1997 agreement several months after it was read into the record. Therefore, the main issue is whether appellant and the Bellomys came to an agreement regarding the property line in relation to the fence.
During the evidentiary hearing held on October 17, 1997, concerning this issue, appellant and the Bellomys testified regarding what they believed were the terms of the agreement. Appellant claimed that they did not discuss the fence during the negotiations. The Bellomys testified that the fence was a primary issue during the negotiations and that they had agreed the fence would be the boundary line.
"The weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact." State v. Burdine-Justice (1998), 125 Ohio App.3d 707,716. The trier of fact has the benefit of seeing and hearing the witnesses testify, and is in the best position to determine the facts of the case. In re Good (1997), 118 Ohio App.3d 371, 377. The trial court made a determination and found that the Bellomys' understanding of the settlement agreement "is more reasonable." The Bellomys' testimony, that they agreed the fence would be the boundary line, is also supported by the transcript of the May 5, 1997 hearing. The Bellomys' counsel stated at the hearing:
 I think we're in agreement with this — that the Bellomys will be granted an easement for the purpose of maintaining their fence in that area, and that will run with the land so future property owners to whom the Bellomys sell to would have the same rights.
It makes sense that the Bellomys would be given an easement to maintain a fence that was to be located on their property. Further, in finding that the Bellomys' understanding of the settlement agreement "is more reasonable," the trial court apparently found appellant's argument regarding the easement for the fence not credible.
Therefore, after having reviewed the record, we find that the trial court did not err in its decision that appellant and the Bellomys agreed to an in-court settlement. The record supports the trial courts findings concerning the terms of that agreement. Accordingly, we overrule appellant's first and second assignments of error.
Appellant argues in her third assignment of error that the trial court erred in its March 1997 opinion, which ruled on the motions for summary judgment that were filed in December 1996. Appellant also argues in her fourth assignment of error that the trial court erred in dismissing the Diocese as a party. However, the enforcement of the settlement agreement by the trial court makes these issues moot because as part of the settlement agreement, the parties "agreed to settle all matters pending in this litigation." Accordingly, we overrule appellant's third and fourth assignments of error.
Appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
PETREE and McCORMAC, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.