OPINION
{¶ 1} Plaintiff-appellant, Hayet Schrock, appeals from a judgment entry decree of divorce and shared parenting plan of the Madison County Court of Common Pleas, Domestic Relations Division. We affirm in part, reverse in part, and remand.
 {¶ 2} Appellant and defendant-appellee, Paul Schrock, were married on July 22, 1995 and have two children. Appellant filed a complaint for divorce on July 24, 2001, and appellee in turn filed an answer and counterclaim.
 {¶ 3} Prior to their marriage, appellant and appellee entered into an antenuptial agreement dated July 20, 1995. During the pendency of divorce proceedings, appellee sought the magistrate's interpretation of specific language in the antenuptial agreement pertaining to gifted or inherited property. The magistrate held an evidentiary hearing and determined that, in keeping with the intent of the document, the designation of future inherited property as either separate or marital was not covered within the scope of the agreement. The trial judge overruled objections by appellant and upheld the findings of the magistrate by an entry filed November 26, 2003.
 {¶ 4} The parties proceeded to a final divorce hearing before the magistrate on April 20, 2004. At the time set for the hearing, the parties informed the magistrate that they had reached agreements as to many of the terms of their divorce. The parties were sworn and counsel for appellee read the agreed-upon terms into the record. Both parties affirmed their agreement on the record. At the close of the hearing, the magistrate ordered counsel for appellee to prepare an entry for the court.
 {¶ 5} More than three months later, on July 26, 2004, the magistrate filed an entry indicating that the parties had failed to comply with the court's order and stating that if an entry was not presented for the court's approval within 30 days, the cause would be dismissed. On August 25, 2004, appellant moved to set aside any proposed judgment entry and essentially to vacate the oral agreement read into the record on April 20, stating that there had been no meeting of the minds with regards to the terms of the divorce. The magistrate held a hearing on the motion on December 9, 2004, at which appellant testified that she had taken an excessive dose of Xanax and wasn't aware of the terms to which she agreed. By an entry filed December 10, 2004, the magistrate found the April 20 agreement accurately reflected the agreement of the parties and that appellant had sufficiently demonstrated that she was competent and aware of the terms of the agreement at the time of the hearing. Appellant filed objections to the magistrate's findings, stating that the April 20 settlement agreement was incomplete and did not reflect a meeting of the minds. On March 11, 2005, the trial judge overruled appellant's objections, stating that the magistrate's findings were consistent with the agreement of the parties as recorded at the April 20 hearing. The trial judge further ordered that the parties were given 14 days to prepare a judgment entry.
 {¶ 6} By an entry dated March 28, 2005, the trial court adopted and filed an entry submitted by appellee as the final judgment entry decree of divorce and shared parenting plan. The entry was signed by counsel for the appellee, but stated only that the entry had been submitted to appellant's counsel on March 15, 2005. The decree incorporated the language agreed to at the April hearing but included additional provisions of property division and parental rights and responsibilities.
 {¶ 7} Appellant appeals from the court's judgment entry raising two assignments of error.
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT AND ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN ADOPTING THE MAGISTRATE'S DECISION ON THE INTERPRETATION OF LANGUAGE IN THE PARTIES ANTENUPTIAL AGREEMENT WHICH WAS CONTRARY TO ITS CLEAR AND UNAMBIGUOUS MEANING OF THE TERMS CONTAINED THEREIN."
 {¶ 10} Assignment of Error No. 2:
 {¶ 11} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT AS A MATTER OF LAW AND FACT BY ADOPTING THE DEFENDANTA-PPELLEE'S PROPOSED JUDGMENT ENTRY DECREE OF DIVORCE AND SHARED PARENTING PLAN WHICH CONTAINED TERMS AND CONDITIONS THAT DID NOT COMPORT FULLY WITH THE SETTLEMENT AGREEMENT REACHED BY THE PARTIES IN COURT SETTLEMENT AND BY FAILING TO COMPLY WITH STATUTORY REQUIREMENTS ON DEVIATIONS FROM CHILD SUPPORT CALCULATIONS."
 {¶ 12} As the resolution of appellant's second assignment of error aids in the resolution of the remaining assignment, we will address her arguments out of order to facilitate discussion. Appellant's second assignment argues that the court erred in adopting the judgment entry decree of divorce and shared parenting plan as submitted by appellee because the entry was inconsistent with the oral agreement read into the record on April 20, 2004 and failed to include findings of fact as to the deviation in child support. The first issue raised for argument under this assignment is that the decree which was adopted by the court contains additional provisions which were not read into the record at the April 20 hearing. Upon review, we have compared the transcript of the April hearing with the language of the decree and it is apparent that several issues of property division and parental responsibilities are included in the decree that were not discussed on the record at the April hearing. Appellant argues that these discrepancies require us to vacate the decree in its entirety and remand for trial on all areas of property division and shared parenting. We disagree.
 {¶ 13} Settlement agreements are favored in the law. Shelterv. Shelter (May 23, 2001), Wayne App. No. 00CA0070; Carnahan v.London, Madison App. No. CA2005-02-005, 2005-Ohio-6684. It is well-established that where negotiations between the parties have resulted in an agreement as to property division, the terms of which are memorialized on the record, the court may properly incorporate the agreement into its journal entry and make it a part thereof. See Spercel v. Sterling Industries (1972),31 Ohio St.2d 36; Waddell v. Waddell (Dec. 16, 1996), Butler App. No. CA96-03-056. In fact, the Ohio Supreme Court has held that where parties to an action voluntarily enter into a definite oral settlement agreement, "it is the duty of the court to make the agreement the judgment of the court and thereby terminate the litigation." Spercel at 39.
 {¶ 14} Cases following the rule of Spercel have explained further that a separation agreement is a contract between the parties involved. Mack v. Polson Rubber Co. (1984),14 Ohio St.3d 34; Fowler v. Smith, Butler App. No. CA2003-02-042,2003-Ohio-6257. As such, the trial court "has the basic authority to sua sponte adopt a proposed judgment entry that accurately delineates [the] terms" of such an agreement. Benz v. Benz,
Geauga App. No. 2004-G-2589, 2005-Ohio-5870. "An oral agreement is still enforceable when its terms can be determined with sufficient particularity," and "parties to a settlement agreement are bound by its terms where the record warrants a finding that the negotiations reached a point where mutual assent had been expressed to orally settle the litigation." Fowler at ¶ 17; citing Spercel at 39.
 {¶ 15} In the case at bar, it is apparent from the transcript of the hearing held April 20, 2004, that the parties entered into an oral agreement as to multiple terms of their divorce. These terms included that appellee would pay appellant, as property division, a sum of $40,000 as down payment on a residence of appellant's choosing within the city of Hilliard, Ohio. Additionally, appellee would obtain a mortgage and finance up to $60,000 towards the residence. As appellant intended to file bankruptcy, both parties agreed that a bankruptcy attorney would be consulted regarding title to the residence, and anticipated that it would be placed in the name of an agreed upon trustee. The parties agreed that the financing and payment of appellant's mortgage principal, interest, taxes and insurance would be in lieu of child support and would continue throughout appellee's child support obligation, likely resulting in an upward deviation from the statutory order. The parties further agreed that the obligation would continue as long as appellant remained in the home, and that sale of the residence would constitute a change of circumstances at which point the court would determine child support according to statute. The agreement also provided that there would be no spousal support.
 {¶ 16} The hearing transcript also reflects that the parties read extensive details of the terms of their shared parenting plan into the record, much of which is uncontested in this appeal. The terms included that appellant would be the residential parent for school purposes and designated specific days and schedules for parenting time, as well as the sharing of holidays, school breaks, and vacations. The hearing transcript also reflects that the magistrate ordered appellee to pay the guardian ad litem fee of $1,647. Both parties were sworn prior to the agreement being read into the record and both affirmed on the record that they understood the terms of their agreement, that the terms had been properly recited for the court, and that they wished the court to adopt the agreement as part of their divorce decree. The magistrate ordered appellee to prepare a judgment entry reflecting the agreement.
 {¶ 17} When no entry was presented three months later, the magistrate again ordered that an entry be prepared or the cause would be dismissed. Appellant then moved to set aside the previous agreement, alleging she had been overmedicated and unaware of the terms to which she agreed. The magistrate held a full hearing at which testimony was presented as to appellant's state of mind and awareness of the proceedings. The magistrate was unpersuaded by appellant's claims and found that the agreement entered into at the April hearing was valid and binding. This finding was upheld by the trial court and appellant does not contest that ruling in this appeal.[1]
 {¶ 18} The terms of these agreements are clear and have been preserved on the court's record. The parties were sworn before the hearing and both affirmed the terms of their agreement on the record. Under Ohio law, the parties entered into a binding contract as to those terms at the April 20 hearing. These agreements remain valid and binding on the parties. Therefore, the decree of divorce and shared parenting plan, to the extent that they reflect the terms agreed to in the presence of the court, are enforceable.
 {¶ 19} We turn then, to the additional provisions in the divorce decree which were not discussed at the April 20 hearing. These provisions include items of both property division and the allocation of parental rights and responsibilities. Provisions in the decree of divorce, contested by appellant include:
 {¶ 20} 1. Under the heading "PROPERTY DIVISION," subheading "Property division to Plaintiff," language added to the terms of appellee's financing of appellant's residence providing that in the event that appellant had not sold the residence at the time appellee's child support obligation ends, she shall refinance the mortgage for the purpose of removing appellee's liability within sixty (60) days or the property shall be placed immediately for sale.
 {¶ 21} 2. Under the subheading "Real Property," language providing that appellee shall retain all real property titled in his name, including, but not limited to an identified 417.257 acres located in Madison County, Ohio. The provision notes that appellant did not own any real property.
 {¶ 22} 3. Under the subheading "Cash Accounts," language providing that appellant would retain three identified bank accounts, and appellee would retain five identified bank accounts.
 {¶ 23} 4. Under the subheading "Personal Property," language providing that each party would retain any tangible personal property currently in his or her possession.
 {¶ 24} 5. Under the subheading, "Motor Vehicles," language providing that appellee would retain three identified vehicles titled in his name.
 {¶ 25} 6. Under the subheading "Retirement," language providing that appellant would retain the IRA account titled in her name and appellant would retain the two IRA accounts titled in his name.
 {¶ 26} 7. Under the subheading "Other Property," language providing that appellant would retain a mortgage from Emmett Schrock, all farm equipment and livestock, all securities titled in his name, and two Transfers to Minors Accounts for the benefit of the parties' two children.
 {¶ 27} 8. Under the subheading "Debts," language providing that each party shall pay any debt currently in his or her individual name, and noting that there were no joint debts.
 {¶ 28} 9. Under the heading "SPOUSAL SUPPORT," language providing that the court would not retain jurisdiction to modify the provision waiving the parties' rights to spousal support.
 {¶ 29} 10. Under the heading "OTHER MATTERS," language providing that the parties waived valuation of the property for the purposes of distribution, waived findings of fact and conclusions of law thereon, and agreed that the distribution provided in the decree was, if not equal, equitable. Also included was language providing that costs would be divided equally, that all restraining orders were terminated and all temporary orders were satisfied, and that appellee would be required to pay the guardian ad litem fee of $1,647 within sixty (60) days. The provision also made the effective date of the decree April 23, 2004.
 {¶ 30} Provisions in the shared parenting plan contested by appellant include:
 {¶ 31} 1. Under Article III — HEALTH CARE INSURANCE, language providing that both parents have the right to have a physician examine the parties' children and access to all records related to the health or welfare of the children. Also, language establishing the responsibilities of the parents in notifying one another in the event of serious illness or injury. Also, language providing that appellee would have the responsibility for providing hospitalization and health insurance for the parties' two children until such time as substantially similar coverage was available to appellant through her employment and only where such coverage was available at a cost less than the current coverage. In such circumstances, appellee would be required to reimburse appellant for the costs of such coverage. Additionally, all uncovered medical costs would be shared equally between the parties, with co-pays being the responsibility of the parent seeking the health care.
 {¶ 32} 2. Under Article VI — CHILD SUPPORT PAYMENTS, language providing that the parties have agreed that appellee would be obligated to pay the mortgage principal, interest, taxes and insurance on appellant's residence and that such payments would be in lieu of child support. The provision was made effective April 23, 2004 and extinguished any arrearages based on temporary orders.
 {¶ 33} 3. Under Article VII — TAX EXEMPTIONS, language providing that appellee would be entitled to claim the minor children for the current and future tax years as long as they are eligible dependents, and stating that in the event that appellant became substantially similarly employed, that each parent would be entitled to claim one child for tax purposes.
 {¶ 34} 4. Language under Exhibit "A" — HEALTH INSURANCE ORDER, language identifying the responsibilities of the parent establishing health insurance coverage for the children (appellee) and stating that appellant would be reimbursed for out-of-pocket expenses incurred for healthcare costs for the children.
 {¶ 35} The parties in this action purportedly entered into agreements as to these terms through negotiations which followed the April hearing. These terms were not entered on the record and the entry reciting the terms of these agreements was submitted to, but not signed by appellant. These additional provisions amount to extrajudicial agreements and would therefore be enforceable only if the parties were found to have entered into a binding contract. See Bolen v. Young (1982), 8 Ohio App.3d 36.
 {¶ 36} However, settlement agreements, like all contracts, may be written or oral, signed or unsigned. Black v. Pheils,
Wood App. No. WD-03-045, 2004-Ohio-4270. It is clear that a settlement agreement is not unenforceable simply because it was not entered in open court, and the parties will be bound where the terms of such an agreement can be determined with sufficient particularity. Carnahan, 2005-Ohio-6684 at ¶ 8. In our recent decision in Carnahan, this court upheld another Madison County trial court decision enforcing an oral agreement where the terms of the agreement were not previously entered on the record. InCarnahan, parties entered into an oral settlement of their litigation at a status conference. Id. No terms were read into the record, but appellees submitted a written draft of the agreement to opposing counsel. Id. at ¶ 4. No entry memorializing the agreement was presented to the trial court. Id.
 {¶ 37} When appellants in that case refused to sign appellees' written draft of the agreement, appellees moved to enforce the agreement. The court held a hearing on the motion and received testimony as to the terms of the alleged agreement. Id. at ¶ 5. The trial court found the parties had entered into a binding settlement agreement. Id. On appeal, this court found that "a settlement agreement is not unenforceable simply because . . . it was not entered in open court." Id. at ¶ 8. "An oral agreement is still enforceable when its terms can be determined with sufficient particularity." Id. Further, "parties to a settlement agreement are bound by its terms where the record warrants a finding that the negotiations reached a point where mutual assent had been expressed orally to settle the litigation." Id., citing Spercel at 39. As such, it is clear that appellant in the case at bar incorrectly assumes that these additional provisions serve to invalidate the decree merely because they were not entered on the record.
 {¶ 38} Appellant cites Zigmont v. Toto (1988),47 Ohio App.3d 181; and Koontz v. Koontz (Sept. 27, 1985), Wood App. No. WD-85-18, 1985 WL 7611, for the proposition that these additional provisions make the decree inconsistent and therefore invalid. However, both of the cases cited by appellant may be distinguished from this case. In Koontz, the parties appeared for a final hearing and recited an oral agreement into the record. Koontz at *5. When neither party submitted an entry representing the agreement, the court filed an entry of its own drafting. Id. at *3. The entry, when compared to the agreement of the parties as read into the record, contained several facial discrepancies. Id. at *6. The Sixth District therefore found that the trial court had abused its discretion in entering a judgment inconsistent with the agreement of the parties. Id.
 {¶ 39} In Zigmont, the terms of the parties' agreement was read into the court's record by the guardian ad litem. Zigmont
at 183. Neither party was sworn prior to the hearing and neither party affirmed the agreement on the record. Id. Further, after the appellee wife submitted a draft of the agreement for the court's approval, the appellant husband refused to sign the draft and instead submitted his own proposed entry. Id. at 184. Neither party's proposed entry conformed to the terms which were read into the record. Id. However, the trial court signed and filed the appellee wife's entry as the agreement of the parties. Id. The Eighth District held that, in light of the dispute that arose as to the terms of the parties' agreement, the trial court should have held an evidentiary hearing to confirm the parties' agreement or to adjudicate the disputed claims. Id. at 185-186.
 {¶ 40} Neither Zigmont nor Koontz accurately represents the situation presented by this case. In the case at bar, both parties appeared before the magistrate and informed the court that they had come to several agreements regarding the terms of their divorce. Both were sworn and both confirmed their agreement to the terms as read into the record for the court. When asked if any corrections or additions to the property settlement were needed, counsel for both parties indicated there were none. Further, the court was told that the only issue remaining to be decided was that of the title to the residence that was to be financed for appellant, which would be decided based on the advice of bankruptcy counsel. Understanding the case to be in final settlement, the magistrate ordered appellee to prepare an entry for final judgment. Appellant eventually challenged the enforceability of the oral, in-court agreement, but at no time did she challenge the proposed entry submitted by appellee or submit an entry of her own drafting. The trial court in this case, unlike the cases cited by appellant, did not merely craft its own entry and was never alerted to a dispute as to the proposed entry submitted by appellee.
 {¶ 41} Where the existence of an agreement is disputed, the court must conduct an evidentiary hearing in order to resolve the dispute before entering judgment on the settlement. Rulli v. FanCo., 79 Ohio St.3d 374, 377, 1997-Ohio-380. However, the Ohio Supreme Court also stated in Rulli that "in the absence of such a factual dispute, a court is not required to conduct such an evidentiary hearing." Id. In the case at bar, appellee submitted the proposed entry, reciting the terms of the parties' agreement, to appellant on March 15, 2005.[2] The trial judge signed and filed the submitted entry as the judgment decree of divorce on March 28, 2005. At no time did appellant contest the terms of the proposed entry or submit an entry of her own drafting. Additionally, when the entry was adopted and filed by the trial judge, appellant failed to seek relief from the additional provisions which she now seeks to avoid. While appellant may have been entitled to an evidentiary hearing had she alerted the court to a dispute with regard to the proposed agreement, appellant failed to raise objection at the trial court level and failed to give the trial court the opportunity to conduct such a hearing on the additional terms of the decree.
 {¶ 42} In addition, although not cited by either party, Loc.R. VII of the Madison County Common Pleas Court states that when a trial court orders a party in whose favor an order, judgment or decree is rendered, to prepare an entry, the procedure is to submit the entry to the adverse party. The adverse party then has 24 hours to endorse, note submission or reject the proposed entry. Upon endorsement or submission, it may be submitted to the court for filing. This procedure was followed in this case, where both the magistrate and trial court ordered the preparation of an entry reflecting the agreement of the parties. After the trial court upheld the oral agreement, appellee, as previously ordered by the magistrate, prepared the entry and submitted it to appellant. Nearly two weeks later, having not been rejected or contested by appellant, it was signed by the trial judge and entered as the decree of divorce. In failing to object to the entry proposed by appellee, and in further failing to seek relief from that entry from the trial court, appellant waived her right to challenge the inclusion of these provisions on appeal.
 {¶ 43} It is well-established that failure to object to the actions of the lower court waives a party's right to challenge those actions on appeal. Wilkerson v. Wilkerson, Butler App. Nos. CA2002-12-315, CA2002-12-318, 2004-Ohio-1191 (finding wife's failure to object to magistrate's decision establishing annual income waived right to appellate review), Kontir v. Kontir,
Champaign App. No. 2003-CA-12, 2003-Ohio-4845 (finding waiver where appellant failed to object to trial court's erroneous inclusion of a provision waiving the parties' objections to the entry). Ohio case law also supports a finding of waiver where, in the case of extrajudicial agreements similar to the case at hand, an appellant has failed to request an evidentiary hearing at the trial court level. In Powers v. MagiTech Corp., Lake App. No. 2001-L-015, 2002 WL 445045, 2002-Ohio-1360, the Eleventh District Court of Appeals upheld a settlement agreement where the appellant Powers failed to request an evidentiary hearing. No terms of the agreement were placed on the record and the court noted in a footnote that no details of the settlement were included in the judgment entry. Id. at *1, fn.2.
 {¶ 44} When MagiTech moved to enforce the agreement, based on Powers' refusal to sign the agreed upon documents, the trial court held a hearing at which Powers argued the documents did not accurately reflect the agreement of the parties. Id. The trial court enforced the agreement and Powers appealed. Id. at *1-2. The Eleventh District found that a factual dispute arose as to the meaning of terms within the agreement and that Powers would have been entitled to present evidence at the hearing, in support of his claims. Id. at *2. However, the court found that counsel for Powers never asked to present evidence in support of his claims and therefore waived his right to do so. Id.; citing and following, Aristech Chem. Corp. v. Carboline Co. (1993),86 Ohio App.3d 251 (finding failure of appellant to request evidentiary hearing with regard to dispute as to terms of extrajudicial agreement constituted waiver).
 {¶ 45} Although the issue is not directly addressed in the cases cited above, both involved settlement agreements entered into outside the presence of the court, the terms of which were unknown to the court prior to the motions to enforce them. The rulings are consistent in finding that, where a party does not seek the appropriate relief from the trial court, they are barred from raising error to such actions on appeal. In the case at bar, appellant failed to reject the allegedly inconsistent entry, failed to alert the court to a dispute as to the proposed entry and thereafter failed to seek relief from the trial court when the entry was adopted and filed. It is not the province of this court to make a factual determination as to the existence or non-existence of an agreement to extrajudicial terms. Appellant waived her right to challenge the terms contested in this appeal.
 {¶ 46} As such, any review could be based on plain error only. Under a plain error analysis, appellant would first need to establish that the court committed an error. See, Imhoff v.Imhoff, Clermont App. No. CA2003-09-075, 2004-Ohio-3013. "Plain error in civil matters will be recognized only in the `extremely rare case where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" Id. at ¶ 11. However, while it may be preferable for a court to conduct a hearing and get the terms of an agreement on the record or in writing, we cannot say the court's failure to do so in this case constituted error where it was not alerted to any dispute with regard to the terms of the agreement which were reached outside the presence of the court. Therefore, appellant fails to establish error on the part of the trial court and fails to meet the first requirement under a plain error review. We find that this issue under appellant's second assignment of error is without merit, and overruled.
 {¶ 47} Appellant's second issue under this assignment of error challenges the court's failure to include findings of fact as to the deviation in child support ordered in the decree. On this issue, appellant's argument has merit.
 {¶ 48} R.C. 3119.022 provides the worksheet to be completed by a trial court in calculating child support under a shared parenting order. Completion of a worksheet, identical in content and form to that in R.C. 3119.022, is mandatory and, when completed, the calculations are "rebuttably presumed" to be the correct amount of child support due. See Marker v. Grimm
(1992), 65 Ohio St.3d 139; see, also, R.C. 3119.022, 3119.03.
 {¶ 49} The overriding concern in the calculation of child support is the best interests of the child. Id. at 141. Where the court determines that the calculated amount would be unjust, inappropriate, and not in the best interests of the child, the court may deviate from the worksheet calculation. R.C. 3119.22
outlines the procedures a trial court must follow in deviating from the guideline calculation. The section requires a trial judge, upon determining that a deviation of the guideline support would be in the best interests of the child, to enter in the journal: (1) "the amount of support calculated pursuant to the basic child support schedule and the applicable worksheet," (2) "its determination that the amount would be unjust or inappropriate and would not be in the best interest of the child," and (3) "findings of fact supporting that determination." R.C. 3119.23 enumerates the factors to be considered by a court, prior to deviating from the amount of support found in the worksheet calculations.
 {¶ 50} In the case at hand, the judgment entry of the trial court includes worksheets completed according to the shared parenting plan, through the lines establishing the actual annual obligation. However, the entry fails to include findings of fact as to the deviation reflected in the final decree, in which appellee's financing and payment of the mortgage for appellant is to be in lieu of child support. A primary purpose for the statutory requirements is to afford meaningful appellate review. See Marker, 65 Ohio St.3d at 142. While it is clear from the record of the April 20 hearing that the financing of appellant's home in lieu of child support was the agreement of the parties, and our analysis above permits that agreement to stand, the court's failure to include findings with regard to the deviation constitutes error. Id. at 143.
 {¶ 51} Appellee cites McCoy v. McCoy (1995),105 Ohio App.3d 651, arguing that the court's error in this case is similarly harmless. However, in McCoy, the court had journalized the necessary findings and adopted a worksheet prepared by the support agency which contained all the same information as the required worksheet. Id. at 655. The Fourth District court found that, although the worksheet did not amount to "strict compliance," remand for a recalculation of the same information was unnecessary. Id. at 656. Conversely, in this case, the court included the worksheet, but failed to journalize the necessary findings supporting the deviation reflected in the parties' agreement, hindering appellate review. We therefore find that appellant's argument as to this issue has merit, and remand this cause to the trial court for the court's inclusion, in its journal entry, of the required findings of fact regarding any deviation from the basic child support schedule.
 {¶ 52} Turning to appellant's first assignment of error, appellant argues that the court erred in interpreting certain language of the parties' antenuptial agreement. As our analysis of appellant's second assignment of error established a valid and existing settlement agreement between the parties, appellant's argument as to the interpretation of this language is moot. Where parties voluntarily enter into a valid and enforceable settlement agreement, such agreement terminates litigation of a cause of action. Medina v. Bohaty (Mar. 5, 1997), Medina App. No. 2572-M. Once parties voluntarily stop litigation over the issues in their cause of action, they are precluded from raising alleged errors of the trial court on appeal unless expressly preserved for appellate review. See, Killa v. Killa, Mahoning App. No. 03 MA 101, 2004-Ohio-566.
 {¶ 53} In the case at hand, the relevant provision of the agreement, found under the heading "Designation of property as separately owned," provided that all real property subsequently gifted to or inherited by appellee Paul Schrock would remain the separate property of appellee, free from claims by appellant Hayet Schrock. The last sentence of that provision stated that "other property subsequently gifted or inherited to Paul and Hayet shall not be considered as or treated as the separate property of the person inheriting or receiving the same." Appellee asserted that this language was intended to leave property subsequently gifted or inherited to either party outside the scope of the agreement and subject to property division as an asset under Ohio law. Appellant argued that the language necessitated a conclusion that property gifted or inherited by either party would be marital.
 {¶ 54} The magistrate held a hearing on May 22, 2003 to determine the intent of the parties in drafting the agreement. The court received testimony from both parties and the attorney who drafted the antenuptial agreement. The attorney testified to discussions with appellee and multiple notations made during drafting indicating that the scope of the antenuptial agreement was intended solely to protect appellee's farm property, and to have no other effect on the property of the parties. The magistrate found that the testimony led the court to interpret the language to leave subsequently gifted or inherited property outside the scope of the agreement and not automatically marital.[3] This finding was adopted by the trial court, over appellant's objections.
 {¶ 55} The case proceeded to trial when the parties entered into the oral settlement agreement read into the record on April 20, 2004. Following a motion to set aside the agreement, the trial court found that appellant knowingly and voluntarily entered into the agreement and that finding is not contested in this appeal. Appellant's argument on appeal goes only to the "additional provisions" contained in the decree which were not discussed at the April hearing. However, we have concluded that the court acted properly in adopting the agreement of the parties where appellant failed to alert the court to any dispute as to the entry. Further, appellant failed to preserve any objection with regard to the court's interpretation of the antenuptial agreement for review. We therefore find that this dispute, like all disputes before the court in this case, was resolved by the parties' voluntary settlement agreement. We therefore find this assignment of error to be without merit and overruled.
 {¶ 56} For the foregoing reasons, the judgment of the trial court is reversed in part and is remanded for entry of an order including the court's findings of fact with regard to the deviation in child support. In all other respects the judgment is affirmed.
 {¶ 57} Judgment affirmed in part, reversed in part, and remanded.
Powell, P.J., and Bressler, J., concur.
[1] Appellant's argument in this assignment goes to the decree's validity alone, arguing that it is inconsistent with the oral agreement. We are not asked in this appeal to review the discretion of the trial judge in finding the parties' oral agreement valid and binding.
[2] Although it appears from the record, by a letter from appellee's attorney, that appellant received copies of a draft entry as early as August 2004, the only draft to appear in the record is the one eventually signed and filed by the trial judge, which states it was submitted to appellant on March 15, 2005. However, at no time did appellant ever identify any entry which she asserted to be either incomplete or inconsistent prior to this appeal.
[3] We note that appellant never objected to the introduction of testimony, but instead offered her own interpretation of the language in question. Appellant is therefore barred from challenging the court's decision to allow such parol testimony, and the court's interpretation could only be reviewed under an abuse of discretion standard, which we do not find.