OPINION
{¶ 1} In Case No. 2002-P-0118, appellant, Larry D. Lomaz, appeals from the September 27, 2002 judgment entry of the Portage County Court of Common Pleas. In Case No. 2003-P-0062, appellant appeals from the May 22, 2003 judgment entry of the Portage County Court of Common Pleas. Both cases stem from the same Portage County Court of Common Pleas Case No. 98 CV 0622, and have been consolidated for all purposes on appeal.
 {¶ 2} On March 14, 1994, appellee, the state of Ohio, received a judgment against appellant and Midwest Fireworks Manufacturing Company, Inc. ("Midwest") for $48,318.59 due to unpaid state sales tax. Appellee filed a "Creditor's Bill and Complaint" against appellant and Midwest on July 28, 1998. According to the complaint, appellee alleged that it filed a judgment lien against appellant on March 1, 1995, for the amount of $48,318.59, plus costs and accrued interest at 9 percent per annum in the amount of $14,724.16. The complaint further alleged that on March 5, 1997, April 10, 1997, May 19, 1997, June 25, 1997, August 11, 1997, and September 19, 1997, execution was issued on the judgment lien and was returned unanswered.
 {¶ 3} On October 23, 1998, by leave of court, appellant filed his answer to the creditor's bill and complaint.
 {¶ 4} On February 3, 1999, appellee filed a motion for appointment of a receiver pursuant to R.C. 2735.01(A). The motion alleged, inter alia, that a receiver was necessary to marshal and liquidate appellant's assets due to appellant's assets not being attachable through ordinary execution attempts, improbability of garnishing appellant's wages, appellant's failure to appear at a duly noticed deposition, and appellant's refusal to produce documents.
 {¶ 5} On April 19, 2002, the trial court held its first hearing on appellee's motion to appoint a receiver. It held subsequent hearings on the issue on July 8, 2002, September 9, 2002, and September 23, 2002.
 {¶ 6} On April 25, 2002, appellant filed a motion to enforce settlement agreement, contending that appellee had previously notified the trial court by telephone that the matter was settled and that an entry would follow. On May 8, 2002, appellee filed a motion to strike appellant's motion to enforce settlement since it had never agreed to any particular proposal submitted by appellant.
 {¶ 7} On September 6, 2002, appellant filed a notice of bankruptcy and requested a stay of the proceedings due to Midwest filing for bankruptcy.
 {¶ 8} On September 27, 2002, the trial court overruled appellant's motion for a stay due to its finding that Midwest was not a party to the case. The court further stated that, "[d]efendant also raises that [p]laintiff and [d]efendant entered into a settlement agreement and that [d]efendant stands ready to perform on that settlement agreement and that that should stay the appointment of a receiver. The [c]ourt finds that the settlement agreement was not approved by the [c]ourt, therefore, the [c]ourt cannot enforce said settlement agreement."
 {¶ 9} The court further ordered that a receiver be appointed in the case, finding that appellee had previously filed seven garnishments, eight other personal earnings attachments, and two liens on bank safety deposit boxes. Despite those efforts, no funds had yet been recovered from appellant even though discovery from Packer Thomas of Warren, Ohio, appellant's tax preparer for the year 1999, indicated that appellant had, inter alia, a net worth of $1,871,863 in Pacific Financial Services of America, Inc. ("Pacific"), and real property worth over $1 million. The court further found that appellant was the sole owner of, and exercised complete control over, three corporations: Midwest I, Midwest Fireworks Manufacturing Company, Inc., II ("Midwest II"), and Pacific. The court concluded that a receiver was necessary for the protection and preservation of funds to satisfy judgment against appellant in the amount of $80,249.10 as of September 23, 2002, and upon which interest at a rate of 9 percent per annum and court costs continued to accrue.
 {¶ 10} On September 30, 2002, immediately following the September 27 judgment entry, appellant filed a notice that Pacific filed for bankruptcy and requested that the court order a stay of the proceedings, which the trial court granted.
 {¶ 11} On October 28, 2002, appellant filed a notice of appeal, Case No. 2002-P0-118, indicating that he was appealing the trial court's appointment of a receiver.
 {¶ 12} On February 14, 2003, appellee, Huntington National Bank ("Huntington"), filed a motion to intervene in Case No. 98 CV 0622, contending that it had an interest in property owned by appellant, and requesting the court-appointed receiver liquidate assets belonging not only to appellee state of Ohio, but to Huntington. The trial court ordered that Huntington be permitted to intervene.[1]
 {¶ 13} Huntington also requested that the court modify its September 30, 2002 judgment granting a stay since appellant's properties were not in bankruptcy, including Midwest II, Sky Slam Fireworks, Inc. ("Sky Slam"), and Pacific Fireworks Manufacturing Co., Inc. ("Pacific Fireworks"). The trial court modified the stay accordingly.
 {¶ 14} On February 24, 2003, this court, sua sponte, dismissed Case No. 2002-P-0118 for failure to prosecute. On May 18, 2003, appellant filed a motion to reconsider and reinstate this appeal.
 {¶ 15} On May 22, 2003, the trial court found that the receiver received four bids for the purchase of Midwest II fireworks and concluded that Colonial Fireworks ("Colonial") submitted the highest bid. The trial court ordered that the bid of Colonial be accepted and the money be paid to the receiver and placed in an escrow account for distribution at a later time.
 {¶ 16} On May 23, 2003, appellant filed a notice of appeal, Case No. 2003-P0-062, of the trial court's May 22, 2003 judgment entry accepting Colonial's bid and directing sale, and simultaneously filed a motion to stay all proceedings.
 {¶ 17} On May 27, 2003, in Case No. 2003-P-0062, we granted appellant's motion to stay the execution of the May 22, 2003 judgment entry ordering the sale of the fireworks. However, on June 11, 2003, we ordered to partially terminate the stay and ordered the fireworks sale to be executed and the proceeds to be placed in escrow until the conclusion of the appeal.
 {¶ 18} On June 11, 2003, appellant notified this court that he had personally filed for bankruptcy on June 5, 2003 and that Midwest II was filing for bankruptcy within the following forty-eight hours. Appellant also moved for a stay of all proceedings. On June 13, 2003, Midwest II filed for bankruptcy.
 {¶ 19} On June 20, 2003, this court reinstated 2002-P-0118 and consolidated it with 2003-P-0062.
 {¶ 20} On June 13 (in Case No. 2003-P-0062) and June 25, 2003 (in Case No. 2003-P-0118), this court granted a stay of all further proceedings due to three separate bankruptcy cases that were pending involving appellant, Pacific and Midwest II.
 {¶ 21} On June 26, 2003, the trial court also granted a motion for stay on all proceedings due to it being notified that appellant and Midwest II had filed for bankruptcy.
 {¶ 22} On October 17, 2005, this court dissolved the stay due to appellant's and Pacific's bankruptcies being dismissed. We further determined that a continued stay, due to Midwest II's bankruptcy still pending, was not necessary since the bankruptcy trustee had abandoned most of the company's assets on the grounds that they have no value. Thus, we concluded that, "in light of the actions taken by the bankruptcy trustee, the issue of the actual sale has now become moot."
 {¶ 23} According to appellant's brief, "[w]ith respect to Appellate Case No. 2003-[P]-0062, the basis of the appeal was the sale of fireworks inventory formerly owned by [Pacific]. In a Judgment Entry filed by this Court on October 17, [2005], this Court stated that `the actual sale (of these fireworks) has now become moot.'" We note that in his brief, appellant did not assign as error any issues relating to Case No. 2003-P-0062.
 {¶ 24} With the stay dissolved and the remaining appeal, Case No. 2002-P-0118, appellant appeals from the September 27, 2002 judgment entry of the trial court's finding that it could not enforce a settlement agreement that was not stated on the record and approved by the court and ordering that a receiver be appointed to sell the fireworks inventory, raising the following five assignments of error:
 {¶ 25} "[1.] The trial court erred as a matter of law in concluding that the only way it could enforce a settlement agreement is if the settlement agreement was stated on the record by the parties and the court approves the settlement agreement.
 {¶ 26} "[2.] The trial court erred by ruling at the first evidentiary hearing that the issue of the existence of a settlement agreement was moot at that time because it did not intend to appoint a receiver until after further discovery was conducted.
 {¶ 27} "[3.] [The] trial court erred as a matter of law by not holding an evidentiary hearing solely on the issue of the settlement agreement per appellant's request prior to permitting the litigation to proceed and, in particular, prior to conducting further hearings on appellee's motion to appoint a receiver.
 {¶ 28} "[4.] The trial court abused its discretion by failing to find that a valid settlement agreement existed.
 {¶ 29} "[5.] The trial court erred as a matter of law in appointing a receiver, as a valid settlement agreement and a motion to enforce that agreement was presented to the trial court prior to the establishment of the factual basis for the appointment of the receiver, and prior to the trial court's ruling that a receiver should be appointed."
 {¶ 30} Appellant's first four assignments of error are interrelated and as such, will be consolidated for purposes of our analysis. Appellant contends that the trial court erred by not holding an evidentiary hearing after he filed his motion to enforce settlement; that the trial court erred by not granting the motion to enforce settlement; and that the trial court misconstrued the law regarding settlements.
 {¶ 31} We first address the standard of review applicable to rulings on a motion to enforce settlement. "Because it is an issue of contract law, Ohio appellate courts `must determine whether the trial court's order is based on an erroneous standard or a misconstruction of the law. The standard of review is whether or not the trial court erred.'" Lepole v. Long JohnSilver's, 11th Dist. No. 2003-P-0020, 2003-Ohio-7198, at ¶ 14, quoting Continental W. Condominium Unit Owners Assn. v.Ferguson, Inc. (1996), 74 Ohio St.3d 501, 502. Accordingly, the question before us is whether the trial court erred as a matter of law in dismissing the motion to enforce the settlement agreement.
 {¶ 32} The law favors settlement agreements as they enable parties to reach resolution of issues in lieu of litigation.McGowan v. McGowan, 11th Dist. No. 2003-G-2500, 2004-Ohio-2786, at ¶ 12. It has long been held that if parties voluntarily enter into an agreement, the agreement becomes a valid and binding contract between the parties. Phillips v. Phillips, 5th Dist. Nos. 2004CA00105 and 2004CA00005, 2005-Ohio-231, at ¶ 22. It is also well-settled that a settlement agreement may be either written or oral, and may be entered into prior to a hearing. Id. at ¶ 26. In effect, "[a] settlement agreement is `a contract designed to terminate a claim by preventing or ending litigation and (* * *) such agreements are valid and enforceable by either party.'" Brown v. Dillinger, 9th Dist. No. 05CA0040-M,2006-Ohio-1307, at ¶ 10, quoting Continental W. Condominium,
supra.
 {¶ 33} The necessary elements of a valid contract include "`an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'"Kostelnik v. Helper, 96 Ohio St.3d 1, 2002-Ohio-2985, at ¶ 16. It is essential that there was a "meeting of the minds" as to the essential terms of the agreement. Id. Although it is preferable to memorialize a settlement in writing, "an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract." Id. at ¶ 15. This is because "`people must be held to the promises they make.'" Id. at ¶ 17, quoting 1 Corbin on Contracts (Perillo Rev.Ed. 1993) 530, Section 4.1.
 {¶ 34} In Rulli v. Fan Co. (1997), 79 Ohio St.3d 374, 339, the Supreme Court of Ohio stated:
 {¶ 35} "[t]o constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear. `A court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think that they have made a contract. They must have expressed their intentions in a manner that is capable of being understood. It is not even enough that they had actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are. Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract.' 1 Corbin on Contracts (Rev.Ed. 1993) 525, Section 4.1. (Footnote omitted.)"
 {¶ 36} For these reasons, in Rulli, the Supreme Court made it clear that "[w]here the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court mustconduct an evidentiary hearing prior to entering judgment." Id. at syllabus. (Emphasis added.)
 {¶ 37} If a settlement agreement is extrajudicial; i.e., the trial judge is advised that the parties have agreed to the settlement, but he is not advised of the terms of the agreement, then the settlement agreement can be enforced only if the parties are found to have entered into a binding contract. Bolen v.Young (1982), 8 Ohio App.3d 36, 38. A party may seek relief through filing an independent action sounding in breach of contract, or it may be sought in the same action through supplemental pleading, setting out the alleged agreement and breach. Id.
 {¶ 38} The record indicates that four hearings were held on appellee's motion to appoint a receiver: April 19, 2002, July 8, 2002, September 9, 2002, and September 23, 2002. Besides two references to the alleged settlement agreement made by appellant, which we will address in the following paragraphs, the issue was only informally discussed by the trial court and the attorneys during these four hearings.[2]
 {¶ 39} At the April 19, 2002 hearing, appellant's counsel argued in opening statements that "our evidence is going to show * * * [that] [t]wo years ago they made an offer of a deal. [Appellant] accepted that offer of a deal. It didn't get finalized, because his associate didn't send an entry. * * * [T]hey're not entitled under clear and convincing evidence to the extraordinary remedy of an interim receiver in a creditor's bills case."
 {¶ 40} Appellant only testified at the first of the four hearings, since that is the only hearing he attended. At this hearing, appellant mainly testified to his assets and the assets of his companies in order for the court to determine if a receiver was necessary. Upon testifying, with respect to the purported settlement agreement, appellant only referenced its claimed existence twice. He did not testify as to any of the terms of the alleged agreement. When appellee's counsel asked him why he did not follow the court's garnishment orders, appellant replied, "we had a settlement in place, so I figured I didn't have to." Again, later in the hearing when appellee's counsel was explaining to the court that appellant completely disregarded contempt orders, appellant stated, "[w]ell, I guess the settlement we entered doesn't mean anything." Appellee's counsel replied, "[t]here's no settlement agreement before us today." Appellant's counsel responded, "I haven't had a chance to present evidence yet. I know I will have an opportunity, but — [.]" The court continued with the issue of appointing a receiver and did not address the issue of the alleged settlement agreement.
 {¶ 41} At the end of the hearing, appellant's counsel requested a copy of a letter from appellee's counsel's old associate, Attorney Michael Reardon ("Attorney Reardon"), regarding settlement discussions. Appellee's counsel refused to give him the letter. When the trial court asked him why, appellee's counsel replied that it was prejudicial "in that it relates to settlement discussions that were not fulfilled." Appellant's counsel went on to argue to the court that appointing a receiver was not equitable and was an extraordinary remedy, when in fact, the parties had settled the case two years previously. Appellee's counsel countered with, "had that settlement been fulfilled by your client, we wouldn't be here. It's a moot point. It's water over the dam." The court intervened, stating, "[y]eah I have marked 7/10/00 settled, entry to come in one week." Appellant's counsel explained that the settlement was the basis for his opposition to the appointment of the receiver. The court replied, "I haven't appointed a receiver. I've said they're going to look at the records at this point. That's why I am saying your argument is moot at this point, because I'm not going to appoint a receiver until [appellee's counsel] tell[s] me what he's going to do."
 {¶ 42} Appellant subsequently filed his motion to enforce settlement, requesting a hearing, on April 25, 2002. The court set the matter for hearing on May 17, 2002. On May 8, 2002, appellee filed a motion to strike appellant's motion to enforce settlement. There is no indication anywhere in the record that the May 17, 2002 hearing occurred or that it was continued. On May 23, 2002, appellee filed its brief in support of its motion to strike appellant's motion to enforce settlement.
 {¶ 43} The following hearing on appellee's motion to appoint a receiver took place on July 8, 2002. After evidence had been presented on the receiver appointment, the court asked if there was any further evidence. Appellant's counsel replied that he would like to introduce a photocopy of the court's file jacket which indicated that there was a call made to the trial court stating the matter had been settled.[3] The court replied, "I have a motion to enforce settlement." The court agreed that appellant's counsel could photocopy it, introduce it into evidence, and give opposing counsel a copy. However, appellee's counsel argued that the issue had been briefed. Appellant's counsel agreed that it had been briefed and stated, "I don't know we need any additional evidence on that topic." The court stated that it would look at it and asked if there was any further evidence either side wished to offer, which there was not.
 {¶ 44} At the September 9, 2002 hearing, after discussing the appointment of a receiver, appellant's counsel again brought up the alleged settlement agreement, arguing that Attorney Reardon had called the court and stated that the matter was settled, entry to follow in a week. The trial court agreed, stating that it was Sandy, the assignment commissioner, who spoke with someone and wrote the note on the inside of the file jacket which "basically indicated the case was settled, entry to come in one week." Appellee's counsel replied, "[a]nd [appellant] never appeared with the $5,000 to sign the entry and the affidavit submitted with our brief explained the exhaustive efforts our office undertook to make contact with him. Even two years later not one penny has been paid. * * *" Appellee's counsel went on to explain that he does not have the authority to accept settlements, that they must be approved by the state and "[t]he fact that [appellant] made a commitment which he did not keep does not make a settlement."
 {¶ 45} Appellant's counsel then argued to the trial court that appellant testified to the terms of the agreement on the record, that he would pay $5,000 up front and $25,000 the following July.[4] The Court agreed that it did not know the terms of the deal, but that it was written in the file that appellee's counsel called and said it was settled. Appellee's counsel agreed that, "[t]here was a telephone call to the [c]ourt we were awaiting funds from [appellant] and the hearing would be adjourned. The case was not settled because there was no exchange, there was consideration, no acceptance of his offer." The court asked the attorneys what the agreement was. Appellee's counsel replied that nothing was in writing. The court concluded the hearing, stating that, "[t]he only way this [c]ourt can enforce a settlement agreement * * * is stated on the record and approved by the [c]ourt. That is the only way I can enforce a settlement agreement. It has to be stated on the record by both parties and approved by the [c]ourt and then I can enforce that agreement to settle a case. If the parties make a side deal on the side, I can't enforce that unless there is something in writing." The court then overruled the motion to enforce the settlement agreement. Appellant's counsel did not object, nor did he proffer the terms of an alleged agreement.
 {¶ 46} At the final hearing on the motion to appoint a receiver held on September 23, 2002, after discussing matters dealing with the appointment, the court stated again that appellant had raised the issue that the settlement agreement should stay the appointment of the receiver, but found "that the settlement agreement was not approved by the [c]ourt, therefore, the [c]ourt cannot enforce that settlement agreement." Again, appellant's counsel did not object or proffer the terms of a settlement agreement.
 {¶ 47} Appellant argues that the trial court misconstrued the law when it stated on the record that the only way it could enforce a settlement agreement was if the agreement was stated on the record by the parties and the court approved it. However, after reviewing the record, it is our view that the trial court initially referenced one method that a settlement contract may be submitted in open court, acknowledged by the parties as their agreement, and then adopted by the trial court as dispositive of the case at hand. The trial court then separately indicated that if the parties had reached a "side deal" (inferentially out of court), that he could not enforce such a settlement proposal unless it was submitted in writing. The latter procedure envisions having such contract marked as an exhibit; and then submitted for admission into evidence, followed by the trial court's granting of the parties' request for admission into evidence. Thus, we do not agree that the trial court misstated the law on this issue, or that it was concluding that there was only a singular method to achieve the adoption and/or admission of a settlement agreement.
 {¶ 48} Again, there was absolutely no evidence submitted to the court regarding the terms of the settlement agreement, despite the court asking appellant's counsel if he had any other evidence regarding the issue. We wish to emphasize as previously stated that when appellant testified at the April 19, 2002 hearing, the only one that he attended, he only mentioned the purported settlement agreement two times, and did not mention theterms of the agreement. Appellant had the burden of production, by a preponderance of the evidence, to prove the existence of the alleged settlement agreement. Davis v. DiNunzio, 11th Dist. No. 2004-L-106, 2005-Ohio-2883, at ¶ 23. Appellant failed to carry his burden on this matter. Thus, we conclude that the trial court did not error.
 {¶ 49} Appellant further argues that the trial court erred when it stated that the existence of a settlement agreement was moot because it had not yet appointed a receiver. Although we agree this statement was inappropriate, since a valid settlement agreement would have clearly ended the litigation of the appellee's creditor's bill and complaint, we conclude that the error was not prejudicial to appellant. Brown, supra, at ¶ 10. The trial court gave appellant an opportunity at a later hearing to submit evidence regarding the terms of the settlement agreement, before the appointment of the receiver, and appellant failed to do so.
 {¶ 50} Moreover, appellant did not object to the trial court's statements, nor did he proffer the terms of the alleged settlement agreement to the court. In fact, when the trial court concluded that it could not enforce a settlement agreement that was not read into the record and approved by the court, instead of objecting, appellant's counsel stated, "[y]our Honor, I understand."
 {¶ 51} "It is well-established that failure to object to the actions of the lower court waives a party's right to challenge those actions on appeal." Schrock v. Schrock, 12th Dist. No. CA2005-04-015, 2006-Ohio-748, at ¶ 43. Thus, "[a]n appellate court need not consider any error which counsel for the party complaining of the trial court's judgment could have, but did not call to the trial court's attention at a time when the error could have been avoided or corrected." Aristech Chem. Corp. v.Carboline Co. (1993), 86 Ohio App.3d 251, 257. Further, "Ohio case law also supports a finding of waiver where, in the case of extrajudicial agreements similar to the case at hand, an appellant has failed to request an evidentiary hearing at the trial court level." Schrock, supra, at ¶ 43.
 {¶ 52} Further, appellant failed to proffer the terms of the alleged settlement agreement to the court. It is well-settled that failure to proffer the precise substance of the agreement effectively waives any error by failing to properly preserve the issue for appellate review. Petitto v. Malaney, 11th Dist. No. 2001-L-065, 2002-Ohio-2442, at ¶ 10, citing State v. Gilmore
(1986), 28 Ohio St.3d 190, at syllabus.
 {¶ 53} After reviewing the record, it appears that a factual dispute existed as to whether the parties did in fact enter into a settlement agreement. However, when given the opportunity to provide further evidence regarding the settlement agreement or at a minimum, advise the trial court that it had not yet heard evidence on the subject, appellant's counsel stated on the record, "I don't know we need any additional evidence on that topic."
 {¶ 54} Without objection, our review is limited to plain error. We note though that appellant did not request us to conduct a plain error analysis on appeal. Even if he would have, it would not have changed the outcome of our decision. "`Plain error in civil matters will be recognized only in the "extremely rare case where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself."'"Schrock, supra, at ¶ 46. We cannot say here that the trial court committed such an egregious act by not conducting an evidentiary hearing when appellant informed the court that he did not know if any additional evidence was needed on the topic.
 {¶ 55} Thus, appellant's first through fourth assignments of error lack merit.
 {¶ 56} In his fifth assignment of error, appellant argues that because a settlement brings an immediate halt to litigation, that the trial court erred in appointing a receiver.
 {¶ 57} The trial court appointed a receiver to sell Midwest II's inventory of fireworks. The trial court approved Colonial's bid and ordered a sale of the inventory. In appellate Case No. 2003-P-0062, appellant appealed this issue. After lifting a temporary stay, we ordered the fireworks to be sold. In an October 17, 2003 judgment entry, we concluded that the actual sale of the fireworks had become moot since the bankruptcy trustee had abandoned most of Midwest II's assets on the grounds that they had no value. As such, we conclude that appellant's fifth assignment of error is also moot.
 {¶ 58} Therefore, appellant's first, second, third, and fourth assignments are without merit. Appellant's fifth assignment is moot. The judgment of the Portage County Court of Common Pleas is affirmed.
M. O'Neill, J., Rice, J., concur.
[1] On March 31, 2000, Huntington received a judgment against appellant for $419,688.26 and $117,236.11, plus interest at the rate of 10 percent per annum from March 27, 2000.
[2] We note that appellant was only present at the first hearing held on April 19, 2002.
[3] Written on the inside of the trial court's file jacket is: "7-10-00 Atty Reardon called — he Lomaz have settled — entry in 1 week."
[4] Although appellant's counsel argued at this hearing that his client testified earlier to the terms of the agreement, we conclude that he did not. Appellant referenced the settlement agreement two times when asked why he did not comply with court garnishment and contempt orders. Neither time did he testify as to what the terms of the alleged agreement were.