OPINION
{¶ 1} Defendants-appellants, Creed and Myrtle Smith, appeal from a decision of the Butler County Court of Common Pleas finding that a settlement agreement existed between them and plaintiffs-appellees, Ron and Leah Fowler, and granting the Fowlers' motion to enforce the agreement.
 {¶ 2} The parties' dispute centers upon performance of a real estate "buy-back" settlement agreement. In 1999, the Smiths sold the Fowlers a house in Oxford, Ohio. In 2001, the Fowlers filed a complaint alleging problems with the house. A trial was scheduled for September 12, 2002. On Thursday September 5, 2002, the parties participated in a settlement conference. Counsel for the parties informed the trial court that the parties had reached a settlement at the conclusion of the conference. The agreement was not read into the record at that time. The Fowlers contend that the agreement was that the Smiths would repurchase the property for $291,000, with no financing contingency. The Smiths, however, contend that the settlement was contingent on them obtaining financing.
 {¶ 3} On October 22, 2002, the Fowlers filed a motion to enforce the settlement agreement. The trial court held an evidentiary hearing on December 17, 2002. Both sides presented arguments and evidence in support of their positions. The court found that a settlement agreement existed between the parties and ordered that it be enforced.
 {¶ 4} The Smiths now appeal the trial court's determination that a settlement agreement existed between the parties. They raise three assignments of error for our review.
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "The trial court erred in enforcing a purported settlement when the agreement which involved conveyance of real estate was not recited on the record or executed in writing by the purchasing parties charged with performance."
 {¶ 7} Assignment of Error No. 2:
 {¶ 8} "The trial court erred in ordering specific performance of the purported settlement buy-back when the purchaser was unable to satisfy a condition precedent involving the procurement of purchase money mortgage financing."
 {¶ 9} Assignment of Error No. 3:
 {¶ 10} "The trial court erred in ordering the defendants to pay the plaintiffs' attorney fees."
 {¶ 11} In their first assignment of error, the Smiths argue that it was error for the trial court to find that a settlement agreement existed between the parties when the parties' intentions were not clear and the agreement was not in writing or signed by the Smiths. In their second assignment of error, the Smiths essentially argue that the trial court erred by finding that the agreement did not contain a financing contingency provision. The Smiths contend that since they are unable to obtain financing to repurchase the house, the trial court's decision ordering them to repurchase the house is an abuse of discretion.
 {¶ 12} At the hearing on the Fowlers' motion to enforce the settlement, counsel for the Fowlers, Amy Ferguson, testified that she took notes regarding the settlement and discussed the specifics with Dan Hurr, counsel for the Smiths. Ferguson's notes specifically state "no financing contingency." Ferguson stated that she then went through the list of settlement terms with Hurr to make certain that the terms were understood. According to Ferguson, Hurr stated that the terms were fine and that Ferguson's notes contained the terms of the agreed settlement. Ferguson testified that she also specifically stated to Creed Smith that she was going to draft the settlement document without a financing contingency. Creed Smith did not remember Ferguson telling him that.
 {¶ 13} That same day, Ferguson returned to her office, drafted a settlement agreement based on the terms she had discussed with Hurr, and faxed the document to Hurr so that the Smiths could sign it. The settlement agreement faxed by Ferguson did not contain a financing contingency provision. According to Ferguson, Hurr called her the following day and left a voice mail stating that the Smiths were coming in to sign the agreement either that day or the next day. The following day, Hurr again assured Ferguson that the Smiths would be in to sign the agreement.
 {¶ 14} By Monday, the agreement was still not signed. Ferguson testified that she was concerned because the scheduled trial date was only three days away. She sent Hurr a fax stating that if the Fowlers failed to sign by 5:00 that evening, additional settlement funds would be necessary due to the fact that the trial was still scheduled and she would have to prepare. Again, two days before the trial date, Ferguson attempted to get the Smiths to sign the document by raising the purchase price. The day before trial, Hurr told Ferguson that the Smiths had applied for financing, but that their application was denied. The trial court issued an entry stating that the court had been advised by the parties that the case had settled. At no time after Ferguson faxed the settlement agreement to Hurr, did Hurr indicate to Ferguson by letter or phone call that the agreement wrongly omitted a financing contingency provision.
 {¶ 15} On October 22, 2002, the Fowlers filed a motion to enforce the settlement agreement. The Smiths filed a motion to set aside the settlement agreement due to the fact that they were unable to obtain financing. The trial court held a hearing on the motions. As mentioned above, Ferguson testified regarding her version of the events surrounding the settlement. Creed Smith testified that following the settlement conference, he told Ferguson and Hurr that if he could obtain financing, he would repurchase the house. Hurr admitted that the parties reached an agreement that the Smiths would repurchase the property. Hurr stated that there was no indication that the Smiths were going to obtain financing to buy back the property, but that Creed Smith was going to talk to his bank and find out whether he could pay the amount of the settlement. Hurr asked the court to set aside the settlement agreement. The trial court found that a settlement agreement existed and that its terms did not include a financing contingency.
 {¶ 16} Thus, the issue before this court on appeal is whether a settlement agreement existed, and if so, what the terms of the agreement were.
 {¶ 17} A settlement agreement is viewed as a particularized form of a contract. Mills v. Ralston, Stark App. No. 2001-CA-00129, 2003-Ohio-262, at ¶ 26. It is a binding contract designed to terminate a claim by preventing or ending litigation. Riordan's SportingGoods, Inc. v. Riordan's Sports Equipment, Trumbull Co. App. No. 2002-T-0099, 2003-Ohio-3878, at ¶ 11. A settlement agreement is not unenforceable simply because such was not entered in open court. ErbeckFarms, Inc. v. Mason (May 20, 1991), Warren App. No. CA90-09-065, at *3. Although a written agreement is preferable, an oral agreement is still enforceable when its terms can be determined with sufficient particularity. Kostelnik v. Helper, 96 Ohio St.3d 1, 2002-Ohio-2985, at ¶ 15. Parties to a settlement agreement are bound by its terms where the record warrants a finding that the negotiations reached a point where mutual assent had been expressed orally to settle the litigation. Spercelv. Sterling Industries, Inc. (1972), 31 Ohio St.3d 36, 39, certiorari denied (1973), 411 U.S. 917, 93 S.Ct. 1550.
 {¶ 18} The standard applicable to a motion to enforce a settlement may present a mixed question of law and fact. If the question involves the question of whether the requirements of a contract have been met, the question is one of law. Moore v. Johnson (Dec. 11, 1997), Franklin App. Nos. 96APE11-1579, 96APE12-1638, and 96APE12-1703, at *12. If, however, the agreement's terms are in dispute, the issue of whether the court should enforce the agreement is reviewed under an abuse of discretion standard. Id. "Where the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment." Rulli v. Fan Co., 79 Ohio St.3d 374,1997-Ohio-380, syllabus.[1]
 {¶ 19} In the case at bar, the relevant inquiry before the trial court was whether an agreement existed between the parties on the day of the settlement conference. See Barstow v. O.U. Real Estate, III, Inc.,
Athens App. No. 01CA49, 2002-Ohio-4989. The record of the hearing supports the fact that the parties agree that there was a settlement. The trial court found that there was no effort on the part of the parties to say that a settlement did not exist. We agree. The Fowlers submitted evidence to establish that the parties came to an agreement that the Smiths would repurchase the property. At no time after Ferguson faxed the settlement agreement to Hurr, did Hurr indicate to Ferguson that a settlement did not exist. During the hearing on the Fowlers' motion to enforce the settlement agreement, Hurr admitted that the parties had reached a settlement regarding the property. In addition, Hurr had filed a motion to set aside the settlement. Thus, we find no error in the trial court's determination that a settlement agreement existed.
 {¶ 20} The Smiths nevertheless argue that there was no settlement agreement as Ferguson had repudiated the agreement by subsequently withdrawing the offer for the Smiths to repurchase the house for $291,000 and by offering the Smiths to repurchase the house for $294,000. We disagree.
 {¶ 21} It is well-established that a party is not allowed to unilaterally repudiate an otherwise valid settlement agreement. Spercel,31 Ohio St.2d at 40. To effect a rescission of a binding settlement agreement, a party must file a motion to set the agreement aside. When no such motion is filed, a trial court may properly sign a journal entry reflecting the settlement agreement. Id. at paragraph two of the syllabus; Mack v. Polson Rubber Co. (1984), 14 Ohio St.3d 34. Ferguson never filed a motion to set aside the settlement agreement. As a result, there was no rescission of the settlement agreement and such agreement is of binding force.
 {¶ 22} Since an agreement existed, the next question we must determine is whether the trial court abused its discretion in determining that the agreement did not include a financing contingency. In making this determination, the trial court relied on evidence such as Ferguson's notes, which specifically state that the agreement was not to contain any type of financing contingency. The settlement agreement faxed by Ferguson to Hurr does not contain any financing contingency. The trial court also relied on evidence that Ferguson went back to her office after the settlement conference and immediately typed the agreement from her notes. As the trial court noted, "I specifically give high value to the fact that this * * * document was prepared the same day and delivered to opposing counsel the same day, which would indicate that clearly reflects the agreement." At no time after Ferguson faxed the agreement to Hurr, did Hurr challenge the absence of financing contingency. At the hearing, Hurr stated that there was no indication that the Smiths were going to obtain financing to buy back the property. In addition, the evidence also supports the fact that the written agreement contained the terms of the agreement because the parties do not dispute that the Smiths intended to sign the document all along. Thus, we find that the trial court did not abuse its discretion in determining that the agreement did not contain a financing contingency.
 {¶ 23} The Smiths nevertheless argue that forcing them to repurchase the property is an abuse of discretion in light of their inability to obtain financing. In light of our holding that the settlement agreement did not contain a financing contingency, we find that the Smiths' argument is moot and we decline to address it. In light of the foregoing, we cannot say that the trial court abused its discretion by ordering the Smiths to comply with the settlement agreement and to repurchase the house. The Smiths' first and second assignments of error are accordingly overruled.
 {¶ 24} In their third assignment of error, the Smiths argue that the trial court erred by awarding attorney fees to the Fowlers in the absence of a finding of bad faith. We agree.
 {¶ 25} Absent a statutory provision allowing attorney fees, "the prevailing party is not entitled to an award of attorney fees unless that party against whom the fees are taxed was found to have acted in bad faith." State ex rel. Kabatek v. Stackhouse (1983), 6 Ohio St.3d 55,55-56. A trial court's award of attorney fees will not be reversed on appeal absent an abuse of discretion. See Motorists Mut. Ins. v.Brandenburg (1995), 72 Ohio St.3d 157. There is no statutory authority for an award of attorney fees in the case at bar. Although clearly required to so find before awarding attorney fees to a prevailing party, the trial court failed to enter a finding of bad faith on the part of the Smiths when it awarded the Fowlers attorney fees. As a result, the trial court's award of attorney fees was improper. See Jarrett v. Sandusky
(Dec. 9, 1994), Erie App. No. E-93-63; Mayfran Internatl., Inc. v. MayConveyor, Inc. (July 15, 1993), Cuyahoga App. No. 62913.
 {¶ 26} We therefore reverse the trial court's award of attorney fees to the Fowlers and remand the case to the trial court with instructions to expressly determine whether the Smiths acted in bad faith. The Smiths' third assignment of error is well-taken and sustained.
 {¶ 27} Judgment affirmed in part, reversed in part, and remanded to the trial court for further proceedings according to law and consistent with this opinion.
VALEN, P.J., and POWELL, J., concur.
[1] The Smiths contend that the trial court exceeded its province underRulli by enforcing the purported settlement agreement when the parties were in disagreement over the terms and existence of the settlement agreement. We disagree. The sole issue in Rulli was whether a court, when faced with a dispute concerning the existence of a settlement agreement or the meaning of its terms, can order the enforcement of the disputed agreement without first conducting an evidentiary hearing. Reasoning that a court cannot enforce a contract unless it determines what it is, and that a court may not force parties into settlement, the Ohio Supreme Court held that whenever a court is confronted with a disputed agreement, the "court must conduct an evidentiary hearing prior to entering judgment." Rulli, 79 Ohio St.3d at 377. In the case at bar, the trial court held an evidentiary hearing before entering judgment. It therefore complied with Rulli.