[Cite as *Clermont Cty. Transp. Improvement Dist. v. Smolinski*, 2015-Ohio-3176.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| THE CLERMONT COUNTY TRANSPORTATION IMPROVEMENT DISTRICT, | : | |
| | : | CASE NO.  CA2014-10-071 |
| Plaintiff-Appellee, | : | O P I N I O N<br>8/10/2015 |
| | : | |
| - vs - | : | |
| | : | |
| RONALD E. SMOLINSKI, et al., | : | |
| Defendants-Appellants. | : | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2012 CVH 1156

Kegler, Brown, Hill and Ritter Co., L.P.A., Richard W. Schuermann, Jr., John P. Brody, Daniel J. Bennett, 65 East State Street, Suite 1800, Columbus, Ohio 43215, for plaintiff-appellee

Kevin M. Black, 8085 Ashgrove Drive, Cincinnati, Ohio 45244, for defendants-appellants, Ronald E. & Yvette L. Smolinski

D. Vincent Faris, Clermont County Prosecuting Attorney, Marshall McCachran, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for J. Robert True, Treasurer and Linda Fraley

**RINGLAND, J.**

{¶ 1}  Defendants-appellants, Ronald and Yvette Smolinski, appeal the decision of

the Clermont County Court of Common Pleas, granting a motion to enforce a settlement

agreement in favor of plaintiff-appellee, the Clermont County Transportation Improvement District (CCTID).  For the reasons discussed below, we affirm.

{¶ 2}  Appellants are the owners of property located in Clermont County, Ohio.  On June 8, 2012, CCTID filed an appropriation action to accommodate an expansion of Clough Pike that adjoined the southern edge of appellants' property.  The complaint specified that CCTID would appropriate a .0264 acre standard highway easement along appellants' southern-most portion of the property, along with a .1361 acre temporary easement that was to expire two years after construction started.

{¶ 3}  Throughout the pendency of the proceedings, the parties had significant disagreements related to the compensation that CCTID owed as a result of the taking.  The parties also disputed the number of access points from appellants' property to the roadway.  In essence, appellants claimed they had three driveways on their property with road access, while CCTID claimed that only two such driveways existed at the time of the taking.

{¶ 4}  The matter was then scheduled for trial.  However, prior to trial, CCTID filed several motions in limine, including a request to restrict appellants' ability to claim damages for loss of the alleged third driveway.  Following a hearing, the trial court granted CCTID's motion in limine finding any evidence concerning the alleged third driveway would not be admitted at trial.  Thereafter, during a break from the proceedings, the parties met privately and were able to reach a purported settlement agreement.  A handwritten agreement was then prepared and signed by the parties and their representatives, which stated:

CCTID and Donald Smolinski [sic] agree as follows:

1. CCTID to pay R. Smolinski $6,000 total.

2. CCTID to install a 24' center drive.

3. CCTID to install a 12' east drive.

4. CCTID to perform all grading and seeding to install said

driveways. Grading and seeding will be done to industry standards. [CCTID's] counsel will advise [appellants] (through counsel) what kind of seed will be used.

5. Temporary easement shall be expanded to facilitate construction of the east driveways.

6. Temporary easement shall be extended to a mutually agreeable date, not to exceed December 31, 2014. [CCTID's] counsel will provide one week notice of when seed will be planted.

7. CCTID shall pay court costs.

8. These terms and conditions shall be further described in an Agreed Settlement Entry, which shall be prepared by CCTID.

Thereafter, the parties informed the trial court that a settlement had been reached and the trial date was vacated.

{¶ 5} Subsequently, however, appellants refused to submit or sign a proposed judgment entry with the trial court. After some delay, the trial court reset the matter for trial. Prior to trial, CCTID filed a motion to enforce the settlement agreement. Following a hearing on the matter, the trial court ruled in favor of CCTID and issued an order granting CCTID's motion to enforce the settlement agreement. Appellants timely appealed from the trial court's decision, raising three assignments of error for review.[1]

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANTS-APPELLANTS ("APPELLANTS") BY DECIDING THAT THE SETTLEMENT AGREEMENT WAS ENFORCEABLE.

---

1. In their reply brief, appellants allege that this court should remand this matter based on allegations that the trial court failed to comply with service requirements as set forth in *Clermont Cty. Transp. Improvement Dist. v. Gator Milford, LLC*, 141 Ohio St.3d 542, 2015-Ohio-241. However, we find appellants' argument to be misplaced, as a reply brief may not be used to raise new assignments of error or new issues for review. *Baker v. Meijer Stores Ltd. Partnership*, 12th Dist. Warren No. CA2008-11-136, 2009-Ohio-4681, ¶ 17. Moreover, we fail to see how the *Gator Milford* decision relates to the present case, as neither party disputes that appellants filed a timely notice of appeal.

{¶ 8} In their first assignment of error, appellants allege the trial court erred by finding they had entered into an enforceable settlement agreement with CCTID that disposed of their claims. We disagree.

{¶ 9} A settlement agreement is viewed as a particularized form of a contract. *Fowler v. Smith*, 12th Dist. Butler No. CA2003-02-042, 2003-Ohio-6257, ¶ 17. It is a binding contract designed to terminate a claim by preventing or ending litigation. *Carnahan v. London*, 12th Dist. Madison No. CA2005-02-005, 2005-Ohio-6684, ¶ 7. Settlement agreements are highly favored in the law. *Id.*

{¶ 10} The standard applicable to a motion to enforce a settlement may present a mixed question of law and fact. *Fowler* at ¶ 18. If the dispute is whether the evidence demonstrates that a settlement agreement exists, an appellate court will not reverse the trial court's determination so long as there is "sufficient evidence to support such finding." *Carnahan* at ¶ 9. "'[W]here there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment.'" *Id.*, quoting *Rulli v. Fan Co.*, 79 Ohio St.3d 374 (1997), syllabus.

{¶ 11} In the present case, the trial court held an evidentiary hearing to determine whether the parties had entered into a settlement agreement. At the hearing, CCTID introduced the parties' handwritten settlement agreement and presented the testimony of Patrick Manger, a board member with CCTID. Manger authenticated the document, testified about the terms contained in the document, and stated that the document was intended as a full settlement of the claims related to the underlying litigation.

{¶ 12} Appellants, however, presented the testimony of Ronald Smolinski. During his testimony, Smolinski also authenticated the agreement and admitted that he had signed the agreement. However, Smolinski contested the validity of the agreement by stating that he only accepted the settlement agreement for "business reasons." Smolinski further explained

that he had been unhappy with the terms of the agreement and felt like he had been "kicked in the stomach" after he signed the agreement. In addition, Smolinski testified that there were external pressures that influenced his decision to sign the settlement agreement. Specifically, Smolinski testified:

> The fact that I have a pressure job. I have this going on. I have a mother that died a couple of years ago, a mother-in-law that we're taking care of, a son who had major back surgery, you know, all of this -- and all of these pressures of coming into court every few weeks is -- is just causing me a lot of physical problems. And it's -- it's getting to be a bit too much. And I don't think I need to say anything more about that.

{¶ 13} As previously noted, the trial court granted CCTID's motion to enforce the settlement agreement. In so doing, the trial court found that the terms contained in the handwritten agreement were reasonably certain, clear, and met all the elements of a contract. Furthermore, although there was some indefiniteness related to certain specifics of the agreement, the trial court found the surrounding circumstances clearly indicated the parties intended to be bound by the material terms of the agreement.

{¶ 14} After review, we find the trial court did not err by enforcing the settlement agreement between CCTID and appellants. Unlike the situation presented to this court in *Sorrell v. Micomonaco*, 12th Dist. Warren No. CA2014-07-096, 2015-Ohio-1417, we find the record herein contains sufficient evidence that the parties entered into a valid settlement agreement. The handwritten agreement in this case outlines the terms with sufficient specificity to establish the parties' intent to be bound by the terms of the agreement as the agreement was signed by CCTID, Smolinski, and the parties' representatives. Smolinski did not refute the validity of his signature or offer any relevant testimony to dispute the validity of the settlement agreement. In essence, Smolinski's testimony merely reflected his dissatisfaction with the agreement that he signed. However, this is not a case in which the parties failed to reach an express agreement or otherwise failed to specify the essential

terms necessary to create a binding settlement agreement. *See, e.g., Sorrell* at ¶ 28-31. Accordingly, we find no error in the trial court's determination that an enforceable settlement agreement existed.

{¶ 15} Furthermore, we also note that the evidence does not support appellants' assertions that they were under duress or otherwise compelled to sign the agreement based on the surrounding circumstances. "To avoid a contract on the basis of duress, a party must prove coercion by the other party to the contract. It is not enough to show that one assented merely because of difficult circumstances that are not the fault of the other party." *Blodgett v. Blodgett*, 49 Ohio St.3d 243 (1990), syllabus. Here, appellants were represented by counsel and did not allege that CCTID or its attorney coerced them during the settlement negotiations into accepting the terms of the agreement. Instead, Smolinski simply alleged that he felt compelled to accept the settlement agreement for "business reasons" and did not negotiate for further rights because he felt that it was a "lost cause." In sum, appellants' complaints regarding the surrounding circumstances of the negotiations, at most, reflect that Smolinski was going through a period of difficult circumstances. That alone, however, does not support a finding of duress.

{¶ 16} Although appellants now express dissatisfaction with the terms of the agreement, "[i]t is well-established that a party is not allowed to unilaterally repudiate an otherwise valid settlement agreement." *Fowler*, 2003-Ohio-6257 at ¶ 21. "To permit a party to unilaterally repudiate a settlement agreement would render the entire settlement proceedings a nullity, even though, as we have already determined, the agreement is of a binding force." *Spercel v. Sterling Industries*, 31 Ohio St.2d 36, 40 (1972). Simply stated, because appellants entered into the settlement agreement, they are responsible for fulfilling the terms they agreed to. Therefore, we find the trial court did not err in finding that the parties entered into a binding settlement agreement. Accordingly, appellants' first

assignment of error is without merit and overruled.

{¶ 17} Assignment of Error No. 2:

{¶ 18} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS BY GRANTING APPELLEES' MOTION TO EXCLUDE EXPERT WITNESSES AND OTHER PROPOSED DEFENSE EXHIBITS.

{¶ 19} In their second assignment of error, appellants argue the trial court erred by granting CCTID's motion in limine with respect to the exclusion of certain expert witnesses and other exhibits relevant to the underlying appropriation action. However, as noted above, the parties entered into a valid and binding settlement agreement with respect to that action. Once appellants entered into a settlement agreement, any issues surrounding the trial court's granting of CCTID's motion in limine, like all disputes before the court in the case, were resolved by the settlement agreement. *See, e.g., Barstow v. O.U. Real Estate, III, Inc.*, 4th Dist. Athens No. 01CA49, 2002-Ohio-4989, ¶ 51; *Schrock v. Schrock*, 12th Dist. Madison No. CA2005-04-015, 2006-Ohio-748, ¶ 52 ("Where parties voluntarily enter into a valid and enforceable settlement agreement, such agreement terminates litigation of a cause of action"). Therefore, we find that appellants' second assignment of error is moot.

{¶ 20} Assignment of Error No. 3:

{¶ 21} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS BY VIOLATING APPELLANTS' CONSTITUTIONAL RIGHTS.

{¶ 22} In their third assignment of error, appellants allege a violation of their constitutional rights. In support of this claim, appellants argue that CCTID placed a utility pole outside of the easements on their property. In addition, appellants also argue that CCTID built a sidewalk outside of the easements provided in the settlement agreement. We disagree with both claims.

**Utility Pole**

**{¶ 23}** As noted above, appellants first complain that CCTID was responsible for the placement of a utility pole on their property, which was allegedly placed beyond the defined utility easements on their property. Appellants allege that the placement of this utility pole amounted to an uncompensated taking under Art. I, Section 19 of the Ohio Constitution. The trial court denied appellants' claim, finding that they could have raised this issue prior to entering into the settlement agreement and stated that "[Smolinski] cannot now refuse to abide by the terms of the settlement simply because he now wants to address these issues and to strike a better deal."

**{¶ 24}** We agree with the trial court and find appellants' argument to be without merit. First, our review of the record supports a finding that CCTID had no control over the placement of the utility pole. For example, Manger testified that CCTID has no control over the placement of the utility poles and CCTID does not have the ability to relocate those utility poles. Rather, Manger explained that the utility poles are a separate and distinct issue. Manger testified that Duke Energy controls the utility easements and CCTID was not involved in the placement of the utility pole. The only evidence to the contrary was provided by Smolinski who speculated that CCTID was responsible for the placement of the pole.

**{¶ 25}** Moreover, the testimony provided by Smolinski is fatally vague and may not even relate to the appropriation action presently before this court. Smolinski's own testimony would support a finding that the utility pole was placed on the land prior to the time that CCTID placed a deposit with the court and instituted these proceedings. As the trial court was in the best position to weigh the credibility of the witnesses and resolve conflicts in the evidence, we will not reverse unless the finder of fact "clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. Here, the trial court did not

- 8 -

clearly lose its way in finding in favor of CCTID.

**Sidewalk**

{¶ 26} Appellants also allege that CCTID violated their constitutional rights by building a sidewalk on their property outside the permissible easements. However, in their brief, appellants concede that their claims relate to issues occurring after the hearing and the trial court's judgment entry. Therefore, this issue is not properly before this court. To the extent that appellants believe that CCTID has breached the terms of the settlement agreement, or affected some form of additional taking, their remedy is through a separate action. A court of appeals is not a trier of fact. *See Chase Bank of Ohio v. Nealco Leasing, Inc.*, 92 Ohio App. 3d 555, 564 (1st Dist.1993) ("It is axiomatic that this court does not sit as a trier of fact"). Accordingly, we find appellants' third assignment of error is without merit and overruled.

{¶ 27} Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.