[Cite as *R&L Carriers, Inc. v. Emergency Response & Training Solutions, Inc.*, 2019-Ohio-3539.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| R&L CARRIERS, INC., | : | |
| Appellant, | : | |
| | : | |
| - vs - | : | CASE NO. CA2018-11-021 |
| | : | O P I N I O N |
| EMERGENCY RESPONSE AND | : | 9/3/2019 |
| TRAINING SOLUTIONS, INC., | | |
| | : | |
| Appellee, | : | |
| | : | |
| - vs - | : | |
| | : | |
| PROGRESSIVE ENVIRONMENTAL | | |
| SERVICES, INC. DBA SWS | | |
| ENVIRONMENTAL SERVICES | | |
| Appellee. | | |

CIVIL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CVG 20150332

Thompson Hine LLP, Anthony C. White, Todd M. Seaman, 41 South High Street, Suite 100, Columbus, Ohio 43215, for appellant

Ritzler, Coughlin & Paglia, Ltd., Patrick J. Thomas, 1360 East Ninth Street, 500 IMG Center, Cleveland, Ohio 44114, for appellee, Emergency Response and Training Solutions, Inc.

Roetzel & Andress, LPA, Nicholas P. Resetar, Ronald B. Lee, 222 South Main Street, Akron, Ohio 44308, for appellee, Progressive Environmental Services, Inc. dba SWS Environmental Services

**HENDRICKSON, P.J.**

{¶ 1}   Plaintiff-appellant, R&L Carriers, Inc. ("R&L"), appeals from a decision of the Clinton County Court of Common Pleas granting the motions of defendant/third-party plaintiff-appellee, Emergency Response and Training Solutions, Inc. ("ERTS"), and third-party defendant-appellee, Progressive Environmental Services, Inc. dba SWS Environmental Services ("SWS"), to enforce a settlement agreement.  For the reasons set forth below, we affirm the decision of the trial court.

{¶ 2}   R&L owns Greenwood Motor Lines, Inc. ("Greenwood"), an over-the-road motor carrier company that has truck terminal locations throughout the United States but is headquartered in Ohio.  ERTS is an emergency response and hazardous material spill broker that specializes in providing third-party initial responses to a variety of environmental needs. In 2011, R&L entered into a contract with ERTS for ERTS to provide emergency and non-emergency environmental services, including responding to and managing spills, accidents, and other environmental conditions.

{¶ 3}   On November 25, 2014, a Greenwood truck was delivering toxic dry cleaning materials to Akzo Nobel, an industrial factory located in Lancaster, South Carolina, when a 55-gallon drum was punctured.  Hazardous materials, specifically tetrachloroethylene and trichloroethylene, were dumped over a 1/8-mile area, including on a large portion of Akzo's real property.  R&L contacted ERTS to handle cleanup and management of the spill.  ERTS, in turn, engaged SWS, one of its subcontractors, to perform the initial onsite response.  A few weeks later, dissatisfied with progress and work done by SWS and ERTS, R&L removed SWS and ERTS from the site and hired BP Environmental, a Maryland company, to handle cleanup of the spill.

{¶ 4}   Subsequently, on September 1, 2015, R&L filed a complaint against ERTS

asserting claims of breach of contract and breach of fiduciary duty. ERTS filed an answer denying R&L's claims and filed a third-party complaint against SWS, asserting claims for negligence, breach of contract and warranty, contractual indemnity, and common law indemnity and contribution. After a lengthy period of discovery, the parties agreed to mediate the dispute.

{¶ 5} On February 22, 2018, the parties, all represented by their respective attorneys, engaged in mediation in Atlanta, Georgia. R&L's representative, Daniel Brake, who is an attorney, was present.[1] Lee Parks was selected as the mediator. After more than ten hours of mediation, the parties were able to agree on a monetary settlement amount. However, additional settlement terms required further mediation. Over the next two weeks, Parks continued to mediate the parties' dispute, oftentimes communicating with the parties by email.

{¶ 6} Parks submitted a proposed settlement term sheet to the parties on February 23, 2018 ("first draft term sheet"). The first draft term sheet did not set forth any indemnity provisions or covenants not to sue. On February 23, 2018, ERTS' attorney advised the mediator that ERTS required "indemnity from R&L for any third party suits against ERTS so that ERTS is completely done with this case. * * * ERTS doesn't want a lawsuit next month or next year from Akzo or any other party under some privity theory." Parks responded to ERTS' attorney's request by email, stating "[T]hat won't happen. They aren't going to indemnify. That was not a term raised at the mediation. I am shocked. Let's discuss."

{¶ 7} ERTS' attorney continued to talk with Parks about ERTS' request for indemnity by R&L. On February 26, 2018, Parks sent an email to ERTS' attorney proposing the following language be added to the term sheet:

---

1. Although Brake is legal counsel to R&L, R&L was represented by a different attorney during mediation and trial proceedings.

R+L represents it is not aware of any other claims based on the chemical spill at the Arko [sic] site and the remediation of same that was the subject of this litigation. R+L agrees to hold ERTS and SWS harmless with respect to any future costs associated with the remediation of the site, and any claims or actions brought by DHEC [South Carolina's Department of Health and Environmental Control] and/or Arko [sic] seeking damages or other financial penalties relating to the spill and/or any alleged deficiencies in the remediation process. ERTS agrees to hold R+L harmless with respect to any claims made by its subcontractor Apex.

{¶ 8} ERTS' attorney responded to Park's email that same day, suggesting the following modifications be made to the proposed indemnity language:

R+L represents it is not aware of any other claims based on the chemical spill at the Akzo site and the remediation of same that was the subject of this litigation. R+L represents and warrants it has not assigned its claims to any other person or entity, and is the sole owner of all claims relating to the spill and remediation at Akzo. R+L agrees to indemnify and hold ERTS and SWS harmless with respect to any future costs associated with the remediation of the site, and any claims or actions brought by DHEC and/or Akzo seeking damages or other financial penalties relating to the spill and/or any alleged deficiencies in the remediation process. ERTS agrees to hold R+L harmless with respect to any claims made by its subcontractor Apex.[2]

{¶ 9} Subsequently, on February 27, 2018, Parks sent ERTS' attorney a modified settlement draft term sheet ("second draft term sheet"). The second draft term sheet contained the following language:

R+L represents it is not aware of any other claims based on the chemical spill at the Arko [sic] site and the remediation of same that was the subject of this litigation. R+L agrees to hold ERTS and SWS harmless with respect to any future costs associated with the remediation of the site, and indemnify them with respect to any claims or actions brought by DHEC and/or Arko [sic] seeking damages or other financial penalties relating to the spill and/or any alleged deficiencies in the remediation process. ERTS agrees to hold R+L harmless with respect to any claims made by its subcontractor Apex relating to the matters that were

---

2. The underlined portions represent the modifications that ERTS' attorney sought to have made to the provision proposed by the mediator.

- 4 -

the subject of this litigation. R+L represents and warrants that it has not assigned any claims against ERTS or SWS to any third party.

Parks indicated that it would be "a huge ask to get [R&L to] hold harmless re DHEC and Akzo," but he would push R&L if ERTS was agreeable to the language.

{¶ 10} Later that evening, Parks emailed ERTS' attorney with another modified settlement draft term sheet ("third draft term sheet"), which Parks stated fixed spelling errors and had "some minor clean up of language." Parks indicated "R+L is agreeable to this. GET IT DONE." The third draft term sheet contained the following language:

> R+L represents it is not aware of any other claims based on the chemical spill at the Akzo site and the remediation of same that was the subject of this litigation. R+L agrees to hold ERTS and SWS harmless with respect to any future costs associated with the remediation of the site, and indemnify them with respect to any claims or actions brought by DHEC and/or Akzo seeking damages or other financial penalties relating to the spill and/or any alleged deficiencies in the remediation process. ERTS agrees to hold R+L harmless with respect to any claims made by its subcontractor Apex relating to the matters that were the subject of this litigation. R+L represents and warrants that it has not assigned any claims against ERTS or SWS to any third party.

ERTS' attorney emailed Parks back, asking to have additional language added to the indemnity clause, "since there could be a local government or local EPA etc." Specifically, ERTS' attorney asked that the terms sheet be modified to state, in relevant part:

> R+L agrees to hold ERTS and SWS harmless with respect to any future costs associated with the remediation of the site, and indemnify them with respect to any claims or actions brought by DHEC or any government entity and/or Akzo seeking damages or other financial penalties relating to the spill and/or any alleged deficiencies in the remediation process."[3]

{¶ 11} On February 28, 2018, Parks sent an email to ERTS' attorney indicating that after speaking with R+L's counsel and Brake, he had "gotten RL [sic] to agree to add 'any

---

3. The underlined portion represents the additional language ERTS' attorney sought to have added to the indemnity provision.

- 5 -

governmental entities' to the indemnity IF that will get it done. Let's close the deal." Later that day, Parks sent an email to counsel for all parties and stated that "R+L agree[ed] to expand the indemnity beyond DHEC to include all governmental agencies." Parks attached to his email an updated draft term sheet ("fourth draft term sheet") and asked the parties to email him with their agreement to the terms and to sign the document.

{¶ 12} After the fourth draft term sheet was shared with the parties, the parties continued to negotiate other terms of the settlement agreement unrelated to the indemnity provision. On March 7, 2018, Parks emailed a final draft term sheet to the parties, stating, "We have an agreement on the term sheet. It is attached. This is the clean version of my last redline that has now been approved by all. If anyone has any further question[s] or issues, please call me directly as soon as possible * * *. It has been a long journey * * * [and] [e]ach party made concessions without which the deal could not have been struck." The final draft term sheet ("Settlement Memorandum") was signed separately by R&L's attorney and by Brake, by ERTS' attorney and its representative, and by SWS. The signed Settlement Memorandum provided, in relevant part, as follows:

> R+L represents it is not aware of any other claims based on the chemical spill at the Akzo site and the remediation of same that was the subject of this litigation. R+L agrees to hold ERTS and SWS harmless with respect to any future costs associated with the remediation of the site, and indemnify them with respect to any claims or actions brought by DHEC and/or Akzo or any other governmental entity [sic] seeking damages or other financial penalties relating to the spill and/or any alleged deficiencies in the remediation process. ERTS agrees to hold R+L harmless with respect to any claims made by its subcontractor Apex relating to the matters that were the subject of this litigation. R+L represents and warrants that it has not assigned any claims against ERTS or SWS to any third party.
>
> * * *
>
> This Memorandum contains all the essential elements of the terms and conditions of the settlement in this case. This is only intended as a written memorandum of a binding Settlement

Agreement resolving all claims arising form the above legal dispute. The formal settlement documents will be prepared and executed by all parties as soon as possible.

{¶ 13} After the Settlement Memorandum was signed, the parties traded proposed formal settlement documents. The first proposed formal settlement document prepared by R&L contained an indemnity clause that was substantially similar to the indemnity clause set forth in the signed Settlement Memorandum. R&L's proposed settlement document set forth the following:

> R+L agrees to fully indemnify and hold ERTS and SWS harmless with respect to any future costs associated with remediation arising out of the Spill Incident, and to indemnify ERTS and SWS with respect to any claims or actions brought for damages or other penalties relating to the Spill Incident and/or any alleged deficiencies in the remediation of the Spill Incident, by any of: the South Carolina Department of Health and Environmental Control, any other governmental entity, or Akzo Nobel.

{¶ 14} SWS and ERTS suggested a few modifications to the language proposed by R&L, including having separate clauses addressing indemnity for ERTS and indemnity for SWS. Then, on April 12, 2018, R&L circulated a revised proposed settlement document that substantially changed the language agreed on in the signed Settlement Memorandum and set forth in R&L's original proposed settlement documents. R&L changed the language to the following:

> R+L agrees to fully indemnify and hold ERTS harmless with respect to any future fines, and/or damages <u>sought in connection with a claim, charge, or action brought against R+L</u> associated with the Spill Incident ~~R+L agrees to fully indemnify and hold ERTS harmless with respect to any claims, liability, and/or actions brought for damages and/or other penalties relating to the Spill Incident~~ and/or any alleged deficiencies in the remediation of the Spill Incident, by any of: the South Carolina Department of Health and Environmental Control, any other governmental entity, and/or Akzo Nobel. Akzo Nobel includes its attorneys, employers, employees, principals, agents, officers, directors, shareholders, lessors, lessees, members, owners, insurers, subsidiaries, divisions, affiliates, successors, and assigns. <u>R+L further agrees to fully indemnify and hold ERTS</u>

harmless with respect to damages sought in connection with a claim or action brought against ERTS relating to the Spill Incident and/or any alleged deficiencies in the remediation of the Spill Incident by Akzo Nobel.  The Parties expressly agree, acknowledge, and stipulate that nothing in this paragraph of this Agreement shall require R&L to indemnify or hold ERTS harmless with respect to future costs, fines, and/or damages associated with any action maintained against ERTS by the South Carolina Department of Health and Environmental Control, or any other governmental entity, regarding the Spill Incident.

R+L agrees to fully indemnify and hold SWS harmless with respect to any future fines, and/or damages sought in connection with a claim, charge, or action brought against R+L associated with the Spill Incident R+L agrees to fully indemnify and hold SWS harmless with respect to any claims, liability, and/or actions brought for damages and/or other penalties relating to the Spill Incident and/or any alleged deficiencies in the remediation of the Spill Incident, by any of:  the South Carolina Department of Health and Environmental Control, any other governmental entity, and/or Akzo Nobel.  Akzo Nobel includes its attorneys, employers, employees, principals, agents, officers, directors, shareholders, lessors, lessees, members, owners, insurers, subsidiaries, divisions, affiliates, successors, and assigns.  R+L further agrees to fully indemnify and hold SWS harmless with respect to damages sought in connection with a claim or action brought against SWS relating to the Spill Incident and/or any alleged deficiencies in the remediation of the Spill Incident by Akzo Nobel.  The Parties expressly agree, acknowledge, and stipulate that nothing in this paragraph of this Agreement shall require R&L to indemnify or hold SWS harmless with respect to future costs, fines, and/or damages associated with any action maintained against ERTS by the South Carolina Department of Health and Environmental Control, or any other governmental entity, regarding the Spill Incident.[4]

{¶ 15} On May 2, 2018, ERTS' attorney notified R&L's counsel that R&L had deviated from the terms agreed on in the March 7, 2018 Settlement Memorandum by seeking to limit indemnification.  R&L's attorney responded with an email advising ERTS that "R&L will never

_____

4.  The underlined text represents the additional language R&L sought to have added to the proposed formal settlement agreement.  The portions that are struck-through were terms R&L sought to have removed from the provision.

accept the obligation to indemnify ERTS [or SWS] as to claims made against it by a governmental entity." R&L's attorney claimed that such a provision was never considered or agreed to by R&L, and that the indemnity provision set forth in R&L's original proposed settlement document was merely a "mis-draft."

{¶ 16} On May 7, 2018, ERTS filed a Motion to Enforce the Settlement Agreement, seeking to have the trial court enforce the terms agreed on by the parties in the March 7, 2018 signed Settlement Memorandum, including the indemnity provision. SWS subsequently filed a motion to join ERTS' motion to enforce the settlement agreement.

{¶ 17} On May 10, 2018, R&L filed its own Motion to Enforce the Settlement Agreement, arguing that the "Settlement Memorandum * * * constitutes a binding enforceable agreement on its own." R&L asserted that ERTS had attempted to stray from the agreed upon terms of the settlement agreement by seeking indemnification on claims brought by DHEC or another governmental entity filing claims against ERTS or SWS, when no such indemnification had been contemplated or agreed upon by the parties during mediation. R&L claimed that indemnification had only been considered when Akzo, DHEC, or another governmental agency brought *direct claims against R&L*. In support of its argument, R&L attached copies of the signed Settlement Memorandum and original and revised proposed formal settlement documents, deposition testimony from a DHEC representative identifying R&L as the party "responsible" for the hazardous material spill, and an affidavit by Brake. In his affidavit, Brake admitted that he attended the February 22, 2018 mediation and signed the March 7, 2018 Settlement Memorandum but stated that

> 3. The possibility of a claim being bought directly against either * * * [ERTS or SWS] by the South Carolina Department of Health and Environmental Control * * * or another governmental entity in connection with the spill incident giving rise to this lawsuit was not discussed at [the] mediation.
>
> 4. At [the] mediation, the parties agreed to a term regarding

indemnification of ERTS and/or SWS by R&L. This term was directed entirely to any claims brought by DHEC or Akzo Nobel against R&L, not against ERTS or SWS directly.

5. ERTS and SWS never raised, as a possibility or a condition of settlement, any term that would include actions brought directly against ERTS or SWS by DHEC.

{¶ 18} An evidentiary hearing on the parties' competing motions was held on June 21, 2018. The only witness to testify at the hearing was ERTS' counsel, Patrick J. Thomas, who discussed ERTS' communications with Parks following the February 22, 2018 in-person mediation. Thomas explained that there had been many phone calls and emails exchanged between the parties and Parks in which indemnity had been discussed. Copies of emails sent between Thomas, R&L's attorney, and the mediator, as well as copies of the negotiated draft term sheets, the March 7, 2018 signed Settlement Memorandum, and R&L's original and revised proposed formal settlement documents were introduced and admitted into evidence.

{¶ 19} Thomas testified that despite reasonable efforts, ERTS was unable to present testimony from Brake or from the mediator at the hearing. With respect to Brake, Thomas explained that he had been advised by R&L's attorney that R&L did not intend to present testimony from Brake at the evidentiary hearing. Thomas therefore sought to subpoena Brake's testimony. However, Thomas was advised by R&L's attorney that despite the fact that the attorney represented R&L and Brake was the representative of R&L, R&L's attorney was unable to accept service of a subpoena on Brake's behalf. ERTS attempted to have Brake subpoenaed at his home address, but the sheriff was unable to complete service. As for obtaining Parks' testimony, Thomas testified that a clause in the mediation agreement prohibited the mediator from appearing as a witness in court proceedings unless the parties agreed to waive that provision. Thomas reached out to R&L's attorney to see if R&L would be willing waive the provision and allow Parks to testify, and R&L's attorney indicated that

R&L was "not inclined to waive the provision." Emails sent between Thomas and R&L's attorney regarding Parks' and Brake's presence at the evidentiary hearing were admitted into evidence.

{¶ 20} After considering the parties' motions and the evidence admitted at the evidentiary hearing, the trial court issued an opinion granting ERTS' and SWS' motions to enforce the settlement agreement and denying R&L's motion to enforce. The court found that

> after voluntarily engaging in mediation with a private mediator, the Parties arrived at a written settlement agreement [the Settlement Memorandum] * * * which was signed by all parties on March 7, 2018. This agreement incorporated all terms of the settlement and disposed of all claims and defenses in this lawsuit. The Agreement further contained the following language: "[This Agreement] contains all the essential elements of the terms and conditions of the settlement in this case."
>
> The Court finds that the Agreement was procured by experienced and knowledgeable attorneys who were aware of the Agreement's terms and conditions, including the Indemnity Provision.
>
> * * The Court finds that the Agreement, Exhibit A, is a binding settlement agreement between and among R+L, ERTS, SWS, and the Court enforces the Agreement. The Parties will be afforded until October 15, 2018 to finalize any formal settlement documents consistent with Exhibit A that may be agreeable to the Parties. In the event that the Parties are unable to agree on formal settlement documents, then Exhibit A will act as the final settlement agreement between the Parties.

{¶ 21} The parties were unable to agree on formal settlement documents. On October 25, 2018, the trial court issued a Notice of Dismissal, stating that "[p]ursuant to Civil Rule 41 and the Court's Order of September 10, 2018, which found the parties had entered into a final settlement, all R+L Carriers, Inc.'s * * * pending claims are dismissed with prejudice as of November 14, 2018."

{¶ 22} R&L appealed, raising two assignments of error related to the trial court's

- 11 -

decision to grant ERTS' and SWS' motions to enforce the settlement agreement.

{¶ 23} Assignment of Error No. 1:

{¶ 24} THE TRIAL COURT ERRED IN GRANTING [ERTS' AND SWS'] MOTION[S] TO ENFORCE THE SETTLEMENT AGREEMENT.

{¶ 25} In its first assignment of error, R&L argues the trial court erred when it granted ERTS' and SWS' motions to enforce the settlement agreement as there was not a meeting of the minds regarding the actual terms of the settlement agreement as it related to indemnification. R&L contends ERTS and SWS failed to present any evidence that the parties "mutually intended, actually and specifically, for R&L to indemnify [ERTS and SWS] with respect to claims brought directly against [ERTS and SWS] by a government agency." In response, ERTS and SWS argue that R&L made judicial admissions recognizing the enforceability of the Settlement Memorandum as a settlement agreement. Further, even if there were no such admissions, ERTS and SWS argue they presented evidence establishing the parties' mutual intent to be bound to the terms set forth in the Settlement Memorandum, including to the provision that required R&L to indemnify ERTS and SWS for "any claims or actions brought by DHEC, and/or Akzo or any other governmental entitety [sic] seeking damages or other financial penalties relating to the spill and/or any alleged deficiencies in the remediation process."

{¶ 26} "A judicial admission is a 'formal statement, made by a party or a party's counsel in a judicial proceeding, that act[s] as a substitute for legal evidence at trial.'" *Williams v. Williams*, 12th Dist. Warren No. CA2012-08-074, 2013-Ohio-3318, ¶ 12, quoting *Haney v. Law*, 1st Dist. Hamilton No. C-070313, 2008-Ohio-1843, ¶ 7. *See also Ohio Valley Associated Builders & Contrs. v. Rapier Elec., Inc.*, 12th Dist. Butler Nos. CA2013-07-110 and CA2013-07-121, 2014-Ohio-1477, ¶ 36. "Judicial admissions can occur at any point in the litigation process." *Haney* at ¶ 7. "[T]o be binding, 'the admission must be of a material

and competent fact, not merely a legal conclusion or statutory definition.'" *Rapier Elec., Inc.* at ¶ 36, quoting *IBEW, Local Union No. 8 v. Kingfish Elec., LLC*, 6th Dist. Williams No. WM-11-006, 2012-Ohio-2363, ¶ 20.

{¶ 27} R&L, in filing its own motion to enforce the settlement agreement, admitted that "the parties in this action agreed to terms of a settlement in early 2018. Those terms were memorialized in an enforceable, written term sheet agreement (the 'Settlement Memorandum'). * * * The Settlement Memorandum * * * constitutes a binding and enforceable agreement on its own." R&L further admitted that

> [t]he Settlement Memorandum in this case expressly states the parties' intent to be bound. It represents that it "contains all the essential elements of the terms and conditions of the settlement in this case," and that it serves as a "written memorandum of a binding Settlement Agreement resolving all claims arising from the above legal dispute."
>
> * * *
>
> The Settlement Memorandum should be enforced as written. ERTS has released all claims against R+L arising out of the spill, and cannot now attempt to backpedal on that obligation.
>
> * * *
>
> The Settlement Memorandum, however, contains all necessary terms to the agreement and remains enforceable as written. R+L respectfully submits ERTS's refusal to enter into a final settlement agreement consistent with the parties' understanding constitutes a breach. The appropriate remedy is for the Court to order specific performance under the Settlement Memorandum.

{¶ 28} Despite admitting that the Settlement Memorandum is a binding and enforceable agreement that "should be enforced as written," R&L now argues that there was not a meeting of the minds regarding the scope and intent of the indemnity clause. R&L contends that given the parties' differing views as to what claims the indemnity clause covers, the Settlement Memorandum is not an enforceable contract.

{¶ 29} After examining the record, we find that R&L's judicial admissions and the

evidence produced by ERTS and SWS in support of their respective motions to enforce the settlement agreement support the trial court's determination that the Settlement Memorandum constituted an enforceable settlement agreement.

{¶ 30} A settlement agreement is a "binding contract designed to terminate a claim by preventing or ending litigation." *Clermont Cty. Transp. Improvement Dist. v. Smolinski*, 12th Dist. Clermont No. CA2014-10-071, 2015-Ohio-3176, ¶ 9. Settlement agreements are highly favored in the law. *Id.*

{¶ 31} Settlement agreements, like any other contract, require "'an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'" *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976). *See also Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376 (1997). "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Kostelnik* at ¶ 16, citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991). "A meeting of the minds occurs where 'a reasonable person would find that the parties manifested a present intention to be bound to an agreement.'" *Capital Real Estate Partners, LLC v. Nelson*, 12th Dist. Warren Nos. CA2018-08-085 and CA2018-08-094, 2019-Ohio-2381, ¶ 14, quoting *Connor & Murphy, Ltd. v. Applewood Village Homeowners' Assn.*, 12th Dist. Butler No. CA2007-09-213, 2009-Ohio-1447, ¶ 52.

{¶ 32} "To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear. 'A court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think that they have made a contract. They must have expressed their intentions in a manner that is capable of being understood.'" *Rulli* at 376, quoting 1 Corbin on Contracts, Section 4.1 at 525 (Rev.Ed.1993). "Where the meaning

of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment." *Id.* at syllabus.

{¶ 33} "The standard applicable to a motion to enforce a settlement may present a mixed question of law and fact." *Smolinski*, 2015-Ohio-3176 at ¶ 10, citing *Fowler v. Smith*, 12th Dist. Butler No. CA2003-02-042, 2003-Ohio-6257, ¶ 18. "If the dispute is whether the evidence demonstrates that a settlement agreement exists, an appellate court will not reverse the trial court's determination as long as there is 'sufficient evidence to support such a finding.'" *Id.*, quoting *Carnahan v. London*, 12th Dist. Madison No. CA2005-02-005, 2005-Ohio-6684, ¶ 9. "The burden of establishing the existence and terms of a settlement agreement rests on the party asserting its existence." *Foor v. Columbus Real Estate Pros.com*, 5th Dist. Delaware No. 12 CAE 080063, 2013-Ohio-2848, ¶ 24, citing *Nilavar v. Osborn*, 127 Ohio App.3d 1, 11 (2d Dist.1998).

{¶ 34} The trial court held an evidentiary hearing on the parties' competing motions to enforce the settlement agreement, and contrary to R&L's assertions, ERTS and SWS presented sufficient evidence to establish a meeting of the minds and the existence of the settlement agreement, including the disputed indemnity provision. Through Thomas' testimony and the exhibits presented at the hearing, ERTS and SWS established that the parties and the mediator were in constant contact in the weeks following the February 22, 2018 in-person mediation. During the follow-up discussions, Thomas indicated ERTS would require "indemnity from R&L *for any third party suits against ERTS* so that ERTS is completely done with this case." (Emphasis added.) Although the mediator initially appeared skeptical that R&L would agree to indemnify ERTS for such claims, over the course of two weeks, R&L agreed not only to indemnify ERTS and SWS for claims brought by Akzo and DHEC, but also for claims made by "any governmental entity" seeking damages or other

financial penalties as a result of the spill or alleged deficiencies in the remediation process. This agreement occurred after numerous draft term sheets were exchanged between the parties. The parties finally reached an agreement, wherein R&L agreed to release all claims it had against ERTS and SWS relating to the chemical spill and remediation process in exchange for a sum of money being paid by ERTS and SWS to R&L. Pursuant to one of the express terms of the agreement, R&L also

> agree[d] to hold ERTS and SWS harmless with respect to any future costs associated with the remediation of the site, *and to indemnify them with respect to any claims or actions brought by DHEC and/or Akzo or any other governmental entity [sic] seeking damages or other financial penalties relating to the spill and/or any alleged deficiencies in the remediation process.*

(Emphasis added.) Both R&L's attorney and its representative, Brake, signed the Settlement Memorandum on March 7, 2018, indicating R&L's agreement to the indemnity provision. R&L then included a nearly identical indemnity provision in its first proposed draft of a formal settlement document.

{¶ 35} R&L later contended it "mis-drafted" the indemnity provision in its first proposed formal settlement documents and that it had not agreed or understood the indemnity provision set forth in the signed Settlement Memorandum to require R&L to indemnify ERTS or SWS for any claims brought directly against ERTS and SWS by a government agency. In support of this argument, R&L submitted Brake's affidavit, in which Brake stated that during the in-person mediation and subsequent settlement negotiations "ERTS and SWS never raised, as a possible condition of settlement, any term that would include [indemnity by R&L for] actions brought directly against ERTS or SWS by DHEC." However, as discussed above, ERTS and SWS presented testimony and exhibits demonstrating otherwise. The trial court clearly found the evidence presented by ERTS' and SWS' more credible and noted that "the [Settlement] Agreement was procured by the experienced and knowledgeable attorneys

who were aware of the Agreement's terms and conditions, including the Indemnity Provision."[5]

{¶ 36} Both R&L's attorney and its representative signed the Settlement Memorandum, thereby agreeing to "all the essential elements of the terms and conditions of the settlement in [the] case," including an indemnification provision that required R&L to an indemnify ERTS and SWS "with respect to any claims or actions brought by DHEC and/or Akzo or any other governmental entitity [sic] seeking damages or other financial penalties relating to the spill and/or any alleged deficiencies in the remediation process." R&L is not permitted to unilaterally repudiate the Settlement Memorandum by attempting to rewrite the terms of the indemnity provision. *See Smolinski*, 2015-Ohio-3176 at ¶ 16. "To permit a party to unilaterally repudiate a settlement agreement would render the entire settlement proceedings a nullity, even though, as we have already determined, the agreement is of binding force." *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 40 (1972). "Once there is a meeting of the minds as to the essential terms of the contract, one cannot refuse to proceed with a settlement due to a mere change of mind." *In re Estate of Shoemaker*, 4th Dist. Adams No. 17CA1039, 2017-Ohio-8699, ¶ 13.

{¶ 37} Accordingly, for the reasons set forth above, we find that the trial court did not err by granting ERTS' and SWS' motions to enforce the settlement agreement. R&L's first assignment of error is overruled.

{¶ 38} Assignment of Error No. 2:

{¶ 39} THE TRIAL COURT ERRED BY IMPLEMENTING THE SETTLEMENT MEMORANDUM AS THE FINAL SETTLEMENT AGREEMENT.

---

5. R&L disputes that ERTS and SWS presented evidence of an enforceable settlement agreement at the evidentiary hearing, contending that Thomas merely provided "after-the-fact argument from counsel [which] is not, as a matter of law, evidence of the parties' intent." R&L's argument, however, ignores the fact that Thomas was sworn in as a witness at the evidentiary hearing. Thomas, who was subject to cross-examination, provided relevant testimony about the settlement agreement and its terms.

**{¶ 40}** In its second assignment of error, R&L argues the trial court erred by enforcing the Settlement Memorandum as the parties' settlement agreement when (1) there was no meeting of the minds between the parties, (2) the Settlement Memorandum failed to "dictate the form of the indemnification or the terms that must be contained in the final settlement agreement to effectuate an indemnification for direct government claims," and (3) the Settlement Memorandum contemplated further action and negotiation by the parties. We have already addressed and rejected R&L's arguments regarding the parties' alleged failure to have a meeting of the minds. For the reasons detailed in our resolution of the first assignment of error, we reject R&L's "meeting of the minds" argument.

**{¶ 41}** Turning to the remainder of R&L's arguments, we note that "Ohio has long recognized the general validity of preliminary agreements." *B.W. Rogers Co. v. Wells Bros.*, 3d Dist. Shelby No. 17-11-25, 2012-Ohio-750, ¶ 28, citing *Normandy Place Associates v. Beyer*, 2 Ohio St.3d 102, 105 (1982), *overruled on other grounds.* "It is thus not the law that an agreement to make an agreement is *per se* unenforceable. The enforceability of such an agreement depends rather on whether the parties have manifested an intention to be bound by its terms and whether these intentions are sufficiently definite to be specifically enforced." (Emphasis sic.) *Normandy Place Associates* at 105-106. "The actions of the parties may show conclusively that they have intended to conclude a binding agreement, even though one or more terms are missing or are left to be agreed upon." (Citations omitted.) *Oglebay Norton Co. v. Armco, Inc.*, 52 Ohio St.3d 232, 236 (1990). A trial court must therefore consider whether the parties manifested a sufficiently definite intention to be bound such that an agreement would be specifically enforceable or whether they merely negotiated towards a formal contract without ever reaching it. *Id. See also B.W. Rogers* at ¶ 28.

**{¶ 42}** In the present case, the terms contained in the Settlement Memorandum were reasonably certain and clear. All essential elements of the terms and conditions of the

- 18 -

settlement were agreed on by the parties. The fact that the Settlement Memorandum contemplated preparation of "formal settlement documents" by the parties did not prevent the trial court from enforcing the Settlement Memorandum as a Settlement Agreement. *See, e.g., Smolinski*, 2015-Ohio-3176, ¶ 13-14 (finding the trial court did not err in granting a motion to enforce a settlement agreement where "there was some indefiniteness related to certain specifics of the agreement, [but] the * * * surrounding circumstances clearly indicated the parties intended to be bound by the material terms of the agreement"). The terms of the indemnity provision were sufficiently definite.[6] Pursuant to the parties' agreement, R&L is required to indemnify ERTS and SWS "with respect to *any claims or actions brought by DHEC and/or Akzo or any other governmental entitity* [sic] seeking damages or other financial penalties relating to the spill and/or any alleged deficiencies in the remediation process."

**{¶ 43}** We therefore find that the trial court did not err by implementing the Settlement Memorandum as the final settlement agreement as the terms of the Settlement Memorandum were definite and clear and the parties had been unable to agree on formal settlement documents consistent with the terms of the agreed-upon Settlement Memorandum. R&L's second assignment of error is overruled.

**{¶ 44}** Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.

---

6. In its reply brief, in support of its argument that there was not an enforceable indemnity provision as "key elements" were missing, R&L cites to *In re Miller's Launch, Inc.*, 773 F.Supp.2d 294 (E.D.N.Y. 2011). We find the circumstances presented in the present case distinguishable from *In re Miller's Launch*. In the New York case, no indemnity provision was expressly agreed upon by the parties. Rather, one party was put on notice that "it would eventually have to consent to a reasonable indemnity provision if one were proposed." *Id.* at 297. In contrast, in the present case, an express indemnity provision was negotiated, agreed upon, and written into the Settlement Memorandum that was executed by all parties.